THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN WILLIAM STAMPS, Defendant-Appellant.

(No. 72-60; )

Fifth District—December 6, 1972.

*Rehearing denied January 22, 1973.*

Paul Bradley, of Defender Project, of Mt. Vernon, (Kenneth L. Jones, of counsel,) for appellant.

R. W. Griffith, State's Attorney, of Edwardsville, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant, John William Stamps, pleaded guilty to murder in the Circuit Court of Madison County and was sentenced to a term of 25 years in the penitentiary. No direct appeal was taken, but subsequently a number of proceedings were initiated in the trial court culminating in a dismissal of a post-conviction petition without an evidentiary hearing. This appeal is from that dismissal. It is contended by defendant that his petition, and those which it amended were sufficient to require an evidentiary hearing under Ill. Rev. Stat., par. 72, ch. 110 or par. 122, ch. 38.

The murder occurred on November 3, 1960, and defendant was immediately arrested. He pleaded not guilty at his arraignment on January 20, 1961. On February 10 he changed his plea to guilty and sentence was imposed after defendant waived a hearing in mitigation. He contends that on December 13, 1962, he personally sent a petition to the court seeking relief under section 72 of the Practice Act. There is no record of this petition, but on April 17, 1963, after correspondence with the clerk, three copies of the petition were filed. On June 7, 1963 the State filed a motion to dismiss. Counsel was appointed and at his request leave was given to file supplementary pleadings. Again there is no record of a disposition of this petition, but a letter from defendant's appointed attorney indicates that a hearing was held and the petition was dismissed on March 31, 1964, for the reason that it was not verified or supported by affidavits.

On May 21, 1964, defendant *pro se* asked leave to amend and for reappointment of counsel. On October 6, 1964, an order was entered reappointing counsel and granting leave, not to amend the former petition, but rather to file a post-conviction petition. On October 9, 1964, in compliance with this order, a post-conviction petition was filed. Again, the

record does not reveal whether any hearing was held but on June 15, 1966, a second post-conviction petition appears to have been filed by another attorney. The State moved to dismiss this petition on July 15, 1966, and, finally, on May 6, 1969, an order was entered stating that all petitions for post-conviction relief were denied without evidentiary hearing, and it is this order which is presently appealed.

In defendant's original petition, which we shall treat as one filed under section 72 of the Practice Act, he alleges as grounds for relief (1) that in May or June, 1959 he was confined to a mental institution, (2) that he was intoxicated at the time of the crime, and (3) that the court erred in not conducting a hearing in mitigation and aggravation. This petition was supported by a letter from the Madison Chief of Police stating that at the time of defendant's arrest he was in a very high state of intoxication; another letter from an assistant State's Attorney stating that he did not interrogate defendant immediately because he appeared to be intoxicated; and another letter from an attorney stating that some time after defendant's conviction he had obtained a Dram Shop judgment on behalf of the victim's wife on the basis of defendant's intoxication.

■■ Based on the record this petition was not filed within two years from the entry of judgment against defendant and therefore was barred by the applicable period of limitations under section 72. But apart from this fact we find that defendant was not entitled to relief even on the merits. Commitment to a mental institution some years prior to trial does not of itself raise a *bona fide* doubt to overcome the presumption of sanity. (*People v. Barkan*, 45 Ill.2d 261.) In addition, the trial court in accepting defendant's plea had no reason to question his sanity *sua sponte* as none was made manifest to him or to anyone else. Nor did the court abuse its discretion in failing to hold a hearing in mitigation, for the record reveals that defendant specifically declined, and waived, such a hearing when it was offered to him. As to intoxication it is true that intoxication is a defense where it is of such a degree that one is incapable of forming the intent required for the crime charged. But it is a defense to be raised by defendant before or at the time of his plea. Failure to raise the defense was of defendant's own choosing and under no circumstances could it be said here that defendant's intoxication constituted newly discovered evidence under Section 72. We therefore hold that defendant's first petition was properly denied.

In his post-conviction petition, and supplements thereto, defendant alleged, (1) that his counsel at the time of his plea was incompetent in failing to confer with him more often and in failing to bring to the court's attention his alleged intoxication and the fact that he had been hospitalized for mental illness a year prior thereto, and, (2) that the

State violated his rights under the due process clause by questioning him and obtaining his confession without the presence of counsel, by failing to bring him before a magistrate for 14 hours after his arrest, by failing to call to the court's attention his alleged intoxication, and by failing to investigate the offense thoroughly so as to reveal that the victim's death resulted from alleged negligent medical treatment and not from the gunshot wound inflicted by defendant.

■■ As stated in *People v. Curtis*, 48 Ill.2d 25, it is required under the Post-Conviction Hearing Act that a petitioner must make a substantial showing of a violation of constitutional rights before a hearing is required, and to accomplish this the allegations must be supported by the record in the case or by accompanying affidavits. In addition the petition or the affidavits must identify with reasonable certainty the source, character and availability of the alleged evidence supporting the petition's allegations.

■■ On the basis of these standards we find that the petition, including its supplements, was properly dismissed. There is no indication of incompetence on the part of defendant's original counsel. He may have conferred with defendant on only three occasions as alleged but there is no allegation that defendant ever informed him that he had previously been confined to a mental institution. Nor is there any contention by defendant even now that he was actually mentally incompetent at the time of his plea. His claim of intoxication is merely a conclusionary assertion made by himself and others but containing no statement of facts upon which to judge its relevance to the crime itself. Certainly the result of the subsequent Dram Shop suit had no relevance whatsover either as to the degree of defendant's intoxication nor as to the competence of his attorney in permitting him to enter a plea. We have no way of knowing the facts surrounding the shooting nor of the details of defendant's confession for they are not in the record. However, it does appear that defendant's plea was the result of negotiation and that after proper admonishments it was accepted. Under such circumstances we find that counsel's failure to bring up defendant's sanity, his intoxication or his failure to confer with him more frequently do not constitute a showing of incompetence and did not therefore, deprive defendant of adequate representation. See *People v. DuLong*, 33 Ill.2d 140.

We now consider the allegations relative to the State. As with defendant's attorney, the allegations with reference to intoxication and sanity are without merit. The State had no reason to doubt defendant's mental capability, and both intoxication and mental incompetence constitute defenses to be first raised by defendant. The fact that the State did not initiate any inquiry on either subject prior to consenting to de-

fendant's plea does not constitute a denial of a constitutional right. In fact, the assistant State's Attorney, by refusing to interrogate defendant until several hours after his arrest, because of his "intoxication", was apparently motivated by his desire to safeguard defendant's rights. It was only when completely sober that defendant was questioned, and when he confessed he did so with full knowledge and awareness.

Next, defendant's arguments that his rights were violated in that he was not taken before a magistrate for 14 hours, did not have counsel present at his interrogation, and that his confession was coerced are all without merit. This case dates from 1960 and neither the *Escobedo* or *Miranda* principles are applicable, and taking defendant before a magistrate within 14 hours complies with the rule that there be "no unnecessary delay". (*People v. Jackson*, 23 Ill.2d 274.) No one of these arguments demonstrates coercion in obtaining defendant's confession, nor does the bare assertion that the State promised him he would receive a sentence of one to ten years. The minimum sentence for murder was 14 years and to ascribe such a promise to the State's Attorney under such circumstances is just not believable. Particularly is this true when the assertion is not supported by attendant details and a description of the circumstances under which the promise was allegedly made and to whom it was made. The contention appears to be merely an afterthought in an attempt to obtain advantage of the principle invalidating guilty pleas obtained on the basis of an unfulfilled promise of a reduced sentence.

Finally, defendant contends that the victim did not die as a result of the gun shot wound inflicted by him, but rather by reason of alleged incompetence and negligence of the physician and nurse who attended the victim in the hospital emergency room. In support of this contention three affidavits were attached to the petition. The Chief of Police of Madison stated that the victim was restrained on the emergency table with his left arm tied down, that he was unconscious, that he was bleeding and gasping for breath, that a nurse pushed him back down when she thought he was struggling to get up, and that a doctor looked at his face and wounds but did nothing else and gave no one any directions. Affiant also said that he later learned that the victim died from suffocating on his own blood. A photographer employee of the police department stated in his affidavit that he was in the emergency room and observed that one arm of the victim was strapped down, that no one did anything for him, and that when he died he heard someone say that the bullet did not hit any vital organs but that he died from his own blood. An ambulance driver in his affidavit stated that he brought the victim to the hospital, that he was covered with blood and blood was running out of his mouth, that at the emergency room nurses came in to attend him and a

resident doctor from India looked at him, and that when the victim died this physician said he had died from strangling on his own blood.

The coroner's report was as follows, "Death was due to a gunshot wound of the face. The bullet passed through the upper lip, the upper part of the mouth, the nose to the left posterio-lateral aspect of the back of the throat and out beneath the base of the skull behind the left ear. The bullet during the passage through the nose and throat severed large vascular structures causing considerable loss of blood and aspiration of blood into both lungs. No other abnormalities were present. Toxicological examination of the heart blood showed a blood alcohol level of 0.12 mg.%. The same amount was found in the stomach contents although the stomach contents themselves consisted almost entirely of fresh blood. I certify that death was due to a gunshot wound of the face."

■■ From these facts defendant argues that the sole cause of death was the lack of treatment of the victim at the hospital; and that he is entitled to an evidentiary hearing on this question because the State knew or should have known such facts, and their failure to bring them to the attention of the court constituted a suppression of evidence. We cannot agree. We have previously held that a coroner's testimony that a knife wound was the cause of death supplemented by further evidence that an accused had inflicted the wound was sufficient to prove the crime of murder. (*Garmon v. People*, 76 Ill.App.2d 24.) Here, the coroner's report attributes the cause of death to a gun shot wound of the face. It describes the path of the bullet through the mouth and throat and its exit beneath the base of the skull behind the left ear. It further states that the severing of several large vascular structures caused considerable loss of blood and aspiration of blood into both lungs. On the basis of this report the State had no reason to believe otherwise than that death was caused by the gunshot wound, and there was no further investigation to be made or evidence to be suppressed. Defendant's argument is based on pure supposition that with adequate treatment death would not have occurred. But the grounds for the supposition are not even well taken. From the statement, attributed to the attending doctor, that death resulted from "suffocating on his own blood" it does not necessarily follow that this resulted from inadequate treatment. The wound was a grievous one which severed a number of vascular structures in the throat which of itself would cause a large amount of blood to be taken into the lungs. But more important, and controlling, is the generally recognized principle that where a person inflicts upon another a wound which is dangerous, that is, calculated to endanger or destroy life, it is no defense to a charge of homicide that the alleged victim's death was contributed to by, or immediately resulted from, unskilled or improper treatment of

the wound or injury by attending physicians or surgeons. See annotation on Homicide-Mistreatment of Wound, 100 A.L.R.2d 783.

On the basis of the above we find that dismissal of defendant's petitions without evidentiary hearing was proper. Accordingly, the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

G. MORAN, P. J., and EBERSPACHER, J., concur.