No. 48,449

STATE OF KANSAS, *Appellee*, v. HAROLD ALLEN RUECKERT, *Appellant*.

(561 P. 2d 850)

Opinion filed March 5, 1977.

*David R. Gilman,* of Overland Park, argued the cause and was on the brief for the appellant.

*Douglas J. Walker, Jr.,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Dennis W. Moore,* district attorney, and *Andrew Heyl,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is a direct appeal from a jury verdict wherein defendant was found guilty of felony murder. (K. S. A. 21-3401.)

The facts reveal a cruel and bizarre homicide. Defendant Harold Allen Rueckert and Patrick Michael Sharkey spent most of the evening of December 21, 1973, bar-hopping in Overland Park, Kansas. At approximately midnight they were driving west on Merriam Lane when they came upon a slow-moving white 1962 Chevrolet. The car was driven by the Reverend Mr. Nathaniel Collins, a 73-year-old retired black minister, who was returning home from a church meeting. After following the minister's car for some time, defendant took his .22 caliber rifle from the gun rack located in the back window of his pickup and began firing at the car. Sharkey then shot the rifle, hitting the rear tires and causing them to go flat. Collins pulled his vehicle into the parking lot of the Eagles' Club in the 4700 block of Merriam Lane. Defendant continued driving west.

After driving five or six blocks, defendant turned his truck around and proceeded back to the disabled vehicle. When defendant and Sharkey arrived at the parking lot, the minister was looking

at the flattened tires. The three men entered into a conversation about the tires. As Collins bent over to look at one of the tires, defendant picked up a jack post lying next to the car and struck him in the head. After striking him several times, defendant rifled his victim's pockets, taking his wallet. Defendant gave Sharkey the wallet; whereupon Sharkey removed the contents and threw the wallet aside.

Taking the murder weapon with them, defendant and Sharkey got back in the truck. As an afterthought, Sharkey decided to retrieve the wallet. The two men drove away and when they crossed a bridge, Sharkey threw out the wallet and jack post. The wallet went over the railing into the river, but the jack post fell onto the bridge. Defendant stopped the truck after crossing the bridge. Sharkey then took the wheel and drove back onto the bridge where defendant got out, picked up the jack post, and threw it into the river. The two men spent the remainder of the night at Sharkey's apartment. The next day Sharkey gave defendant forty dollars, half the proceeds of the robbery.

At approximately 3:00 a. m., Collins was discovered in the parking lot, and police and an ambulance were summoned. He was rushed to the K. U. Medical Center where, despite the efforts of several doctors, he died shortly thereafter.

Police investigators processed the crime scene and found blood on and about the automobile. They also removed both rear wheels and took them to the crime lab where four lead slugs were recovered. During their investigation of the crime authorities came into possession of a rifle defendant had given to an acquaintance. A bullet comparison test indicated the slugs in the tires came from defendant's gun.

Both Sharkey and defendant were charged with felony murder and aggravated robbery. Sharkey pled guilty to second degree murder and became a state's witness. Defendant was tried and found guilty of felony murder.

## I. Endorsement of Witnesses

As his first point on appeal defendant contends the trial court erred in allowing the state to endorse Sharkey as its witness at the commencement-of trial. This procedure is governed by K. S. A. 22-3201 (6) (now K. S. A. 1976 Supp. 22-3201 [6]) which requires the prosecuting attorney to endorse on the information the names of witnesses known to him at the time of filing. He may thereafter endorse the names of additional witnesses if he obtains permission

of the court. (*State v. Robertson*, 203 Kan. 647, 455 P. 2d 570; *State v. Poulos*, 196 Kan. 287, 290, 411 P. 2d 689, cert. denied, 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63.)

The right of the state to endorse additional witnesses rests within the sound discretion of the trial court. Its ruling will not be disturbed in the absence of a showing of an abuse of discretion. The test is whether the defendant's rights have been prejudiced. (*State v. Rogers*, 217 Kan. 462, 537 P. 2d 222; *State v. Collins*, 217 Kan. 418, 536 P. 2d 1382; *State v. Williams & Reynolds*, 217 Kan. 400, 536 P. 2d 1395; *State v. Price*, 215 Kan. 718, 529 P. 2d 85; *State v. Blocker*, 211 Kan. 185, 505 P. 2d 1099.)

Defendant shows no evidence of surprise or prejudice. The witness was known to counsel and had been interviewed by him four days prior to trial. At no time did defendant express the need for additional time due to surprise. In fact counsel admitted to the trial court that he fully expected Sharkey to be called as a witness. Defendant asks this court to presume prejudice because the witness was an accomplice to the crime. This court has not in the past and will not now create a special rule merely because the endorsed witness was an accomplice. (*State v. Motor*, 220 Kan. 99, 551 P. 2d 783; *State v. Robertson*, supra.)

## II. Severance of Defendants

After defendant and Sharkey were arraigned on charges of aggravated robbery and felony murder, defendant moved the court for a determination of his competency to stand trial. The trial court ordered defendant to be transferred to Larned State Hospital for psychiatric evaluation. While defendant was at Larned, the court severed the cases involving defendant and Sharkey and brought Sharkey to trial. Defendant complains he was prejudiced as he was not present and represented by counsel at the severance hearing.

Defendant argues the severance motion was a "critical stage" of the proceeding and he was entitled to notice in order to have counsel present. We cannot agree. A motion to sever is not a "critical stage" of the proceeding which requires counsel to be present as is an arraignment, preliminary hearing, or pretrial custodial interrogation. (*White v. Maryland*, 373 U. S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050; *Coleman v. Alabama*, 399 U. S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999; *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974.) The granting of separate trials is a discretionary power which rests in the hands of the trial court. (K. S. A. 22-3204.) A defendant does not have the right to

be tried with or separate from a codefendant if no prejudice to his rights can be shown. (*State v. Sully*, 219 Kan. 222, 547 P. 2d 344; *State v. Williams & Reynolds*, supra.) Here the trial court was forced to sever the cases against the two defendants. Sharkey was entitled to his right to a speedy trial pursuant to K. S. A. 22-3402 (1) (now K. S. A. 1976 Supp. 22-3402 [1]) and this right could not be sacrificed merely because defendant was undergoing a competency determination. The decision of the trial court did not prejudice the rights of defendant.

## III. Felony Murder Rule

Defendant's next two points deal with the application of the felony murder rule. He argues the trial court erred in failing to instruct on the lesser degrees of homicide. Because evidence of the commission of the underlying felony, aggravated robbery, is weak, different inferences as to the degree of homicide committed might be drawn by the jury. In support of this proposition defendant cites *State v. Bradford*, 219 Kan. 336, 548 P. 2d 812.

Normally, a trial court is required to give a full range of lesser included offense instructions; however, when a murder is committed during the commission of a felony the rule requiring instructions on lesser included offenses does not apply. (*State v. Reed*, 214 Kan. 562, 520 P. 2d 1314; *State v. Masqua*, 210 Kan. 419, 502 P. 2d 728, cert. denied, 411 U. S. 951, 36 L. Ed. 2d 413, 93 S. Ct. 1939; *State v. Germany*, 173 Kan. 214, 245 P. 2d 981.) If a murder is committed during the perpetration of a felony, the felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first degree murder. (*State v. Goodseal*, 220 Kan. 487, 553 P. 2d 279; *State v. Guebara*, 220 Kan. 520, 553 P. 2d 296; *State v. Clark*, 204 Kan. 38, 460 P. 2d 586; *People v. Nichols*, 230 N. Y. 221, 129 N. E. 883 [1921].)

An exception to this rule was created in *State v. Bradford*, supra. There the defendant and his accomplice, the state's star witness, had been on a drinking spree. Defendant decided to rob someone. He and the state's witness found a victim, struck him over the head, and dragged him into an alley. Defendant picked up a large rock or cement block to "finish him off." He then allegedly went through the victim's pockets, removing a paper pad which was in his possession when he was arrested. The state charged the defendant with first degree murder committed during the perpetration of a robbery. After proper instruction the defendant was convicted of second degree murder. On appeal the defendant claimed the instruction

on second degree murder was improperly given, that the case was a felony murder case and that he could only be found guilty of first degree murder or acquitted. In affirming the conviction this court said:

"In the case at hand, conflicting evidence was presented as to whether or not the felony charged, robbery, had occurred. The evidence introduced by the defendant was calculated to suggest to the jury that the defendant had not committed the robbery or else he would have had something in his possession beyond a valueless note pad to show for it. Defendant's evidence indicated that the deceased had a large sum of money with him prior to his death. Defendant had but five dollars in his possession when arrested. The evidence was thus disputed and unclear as to whether or not a robbery had been perpetrated. Lacking was the clear and uncontroverted evidence of robbery in *Reed*, or of forcible rape in *Masqua*.

"The testimony of Carlie Moss, defendant's accomplice, was subject to doubt in part or in whole. He told the police numerous stories, some not involving the defendant, before settling on the story which he told to the jury. The jury might well have believed his testimony as to the manner of the victim's death, but not concerning the attempted robbery.

. . . . . . . . . . . . .

"While we agree that in a felony murder case no instructions on lesser degrees of homicide should be given where all of the evidence demonstrates that the homicide was committed during the commission of a felony (40 Am. Jur. 2d, Homicide, § 534), we hold that the rule is otherwise where, as here, evidence of the commission of the felony is disputed or unclear, where the evidence supports instructions on lesser degrees, and where different inferences and conclusions might be drawn by the trier of fact as to which degree of homicide, if any, was committed. *State v. Wilson*, 182 Or. 681, 684, 695, 189 P. 2d 403." (pp. 342-44.)

While the rule set forth in *Bradford* is sound, we do not believe the rule compels a similar conclusion in this case. Here the undisputed evidence was sufficient to convince a reasonable mind that a felony had been committed; therefore, instructions on lesser degrees of homicide were not warranted. Sharkey testified defendant struck the minister on the head with a jack post and when he fell to the ground, mortally wounded, defendant took his wallet. Two witnesses testified that defendant later told them he and Sharkey had hit the old "nigger" in the head and had taken money from him. Defendant testified he could not remember whether he struck and robbed the minister because he had too much to drink.

Evidence of intoxication alone does not necessitate the giving of instructions covering lesser degrees of homicide in a felony murder case when the underlying felony is aggravated robbery. Voluntary intoxication is not a defense to a general intent crime, although it may be used to demonstrate the inability to form a particular state

of mind necessary for a specific intent crime. (*State v. Farris*, 218 Kan. 136, 542 P. 2d 725.) Specific intent is not an element of the crime of aggravated robbery. (*State v. Thompson*, 221 Kan. 165, 558 P. 2d 1079.) Therefore, either defendant perpetrated the robbery and is responsible for the murder, or he did not commit the robbery and murder, and is not guilty of any degree of homicide. Although the trial court gave an instruction on intoxication, it was not reversible error. Defendant should not be allowed to derive an advantage from an error from which he suffered no injury, but on the contrary derived a benefit. (*State v. Carpenter*, 215 Kan. 573, 527 P. 2d 1333.)

Using *State v. Clark*, supra, as a springboard, defendant argues the aggravated robbery was part and parcel of the homicide and could not be used to create a felony murder. In *Clark*, the defendant was convicted of first degree murder of his wife under the felony murder rule. The defendant and his wife had been having marital difficulties which the defendant solved by stabbing her. The state invoked the felony murder rule alleging the underlying felony was aggravated assault with the murder weapon. This court disapproved the use of the aggravated assault as the underlying felony when it was the same act which resulted in homicide. (See also, *State v. Moffitt*, 199 Kan. 514, 431 P. 2d 879; *State v. Fisher*, 120 Kan. 226, 243 Pac. 291.)

Defendant argues the merger rule set forth in the foregoing authorities causes the aggravated robbery in this case to merge into the homicide and precludes the use of the felony murder rule. We cannot agree.

The proper test for determining whether an underlying felony merges into a homicide is whether all the elements of the felony are present in the homicide and whether the felony is a lesser included offense of the homicide. If this is not true then the felony must be a separate and distinct offense and the doctrine of merger does not apply. While the force used to commit the robbery is an integral part of the aggravated robbery, it is not the entire body of that offense. The essence of the aggravated robbery is to deprive a person of property, which is not an element of homicide. The aggravated robbery and the homicide do not merge.

In *People v. Burton*, 6 Cal. 3d 375, 99 Cal. Rptr. 1, 491 P. 2d 793, the California Supreme Court faced this question. The court held that the merger rule does not apply in a felony murder case when

the underlying felony is armed robbery. Rejecting the defendant's argument the court stated:

"The net effect of defendant's argument would be to eliminate the application of the felony-murder rule to all unlawful killings which were committed by means of a deadly weapon, since in each case the homicide would include *in fact* assault with a deadly weapon, even if the homicide resulted from the commission of one of the six felonies (arson, rape, mayhem, robbery, burglary or lewd and lascivious acts upon the body of a child) enumerated in section 189 of the Penal Code. It is, of course, possible to interpret our language in *Ireland* and *Wilson* to mean merely that if the facts proven by the prosecution demonstrate that the felony offense is included in fact within the facts of the homicide and integral thereto, then that felony cannot support a felony-murder instruction. However, we reject this interpretation of that language and its consequent assertion that the felony-murder rule has been abolished in all homicides accomplished by means of a deadly weapon as unwarranted both in logic and in principle.

"We conclude that there is a very significant difference between deaths resulting from assaults with a deadly weapon, where the purpose of the conduct was the very assault which resulted in death, and deaths resulting from conduct for an independent felonious purpose, such as robbery or rape, which happened to be accomplished by a deadly weapon and therefore technically includes assault with a deadly weapon. Our inquiry cannot stop with the fact that death resulted from the use of a deadly weapon and, therefore, technically included an assault with a deadly weapon, but must extend to an investigation of the purpose of the conduct. In both *Ireland* and *Wilson* the purpose of the conduct which eventually resulted in a homicide was assault with a deadly weapon, namely the infliction of bodily injury upon the person of another. The desired infliction of bodily injury was in each case not satisfied short of death. Thus, there was a single course of conduct with a single purpose.

"However, in the case of armed robbery, as well as the other felonies enumerated in section 189 of the Penal Code, there is an *independent felonious purpose,* namely in the case of robbery to acquire money or property belonging to another. . . .

". . . The key factor as indicated earlier in the enumerated felonies is that they are undertaken for a felonious purpose independent of the homicide. . . .

"Defendant in this case by embarking upon the venture of armed robbery brought himself within the class of persons who the Legislature has concluded must avoid causing death or bear the consequences of first degree murder. The trial judge quite correctly instructed on felony murder based on homicides directly resulting from the commission of armed robbery." (pp. 386-88.)

We adopt the foregoing from the California court as logical and sound. Applied to facts in the instant case we hold a felony murder conviction may be based upon aggravated robbery even though death was caused by the acts of violence constituting aggravated robbery, because there are elements of aggravated robbery which

evidence felonious purpose independent of the homicide. (*People v. Burton,* supra; *People v. Nichols,* supra.)

## IV. Mistrial

Defendant next alleges the trial court abused its discretion by not granting defendant a mistrial. Midway through trial the prosecution came into possession of one of defense counsel's files. It appears that as the trial court recessed on May 30, 1974, an assistant district attorney and his trial assistant proceeded to gather up their files. Inadvertently they picked up a file belonging to defense counsel, who had already left the courtroom. The files were taken to the district attorney's office where they were left overnight. The next morning as the prosecutor was assembling his files in the courtroom, he discovered the extra file. Defendant's counsel, who had not missed the file, was immediately informed of the incident.

Defendant brought the matter to the attention of the trial court by moving for a mistrial. The court heard both parties and through questioning found the taking of the file to be completely accidental and unintentional.

Under K. S. A. 22-3423, broad guidelines are set out for granting mistrials, all subject to the discretion of the trial court. Absent an abuse of discretion the decision of the court will not be set aside. (*State v. Culbertson,* 214 Kan. 884, 522 P. 2d 391.) The trial court had the best perspective of the problem with the wayward file; from our view, the manner in which it acted was not an abuse of discretion.

## V. Discovery Order

Defendant alleges prejudicial error on the prosecution's failure to comply with a discovery order. Motion for the order for *in camera* inspection was filed on February 20, 1974. The motion requested, *inter alia,* that the court require the state to produce any and all matters contained in its file which might be favorable to defendant. The trial court granted the motion and required the state to submit its file for inspection by the court. Further, the pretrial order required the state to turn over all scientific tests to the defendant for inspection.

A state's witness revealed during cross-examination at the trial that a test had been conducted on blood samples found on the victim's car which indicated the presence of blood of a type different from the victim's or defendant's. A report of the test had been sent to the district attorney and was in his file, but had been overlooked

by the trial court in its *in camera* inspection, and by the prosecutor. At the time of the revelation defendant made no motion for mistrial, continuance or any other remedial action as set forth in K. S. A. 22-3212 (7), but instead continued to cross-examine the witness. The implication that the blood was that of a third person, possibly the real culprit, was argued to the jury by defendant.

The first objection to the violation of the discovery order was made in a motion for a new trial. The trial court ruled that no prejudice resulted because defendant had an opportunity to develop the value of the evidence through cross-examination. When the prosecution is charged with having failed to comply with a discovery order the sanctions to be imposed under K. S. A. 22-3212 (7) must be left to the discretion of the trial court. (*State v. Villa & Villa,* 221 Kan. 653, 561 P. 2d 428.)

Defendant argues the question is controlled by *Brady v. Maryland,* 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. We do not agree. *Brady* applies to suppressed evidence. In *State v. Walker,* 221 Kan. 381, 559 P. 2d 381 (No. 48,277, decided January 22, 1977), this court said:

". . . Evidence is not suppressed or withheld if the accused has knowledge of the facts or circumstances, or if the facts become available to him during trial." (p. 383.)

## VI. Instructions

As defendant's seventh allegation of error he argues the trial court "erred when it refused to instruct on independent superseding cause and by refusing to allow evidence thereon." We see no merit to the argument.

The record reveals extensive testimony concerning the nature and extent of the victim's injuries, the diagnosis and treatment made by the doctors at the K. U. Medical Center upon the victim's arrival, and the cause of the victim's death. There is no evidence in the record to indicate the trial court refused to permit defendant to develop his inquiry into the treatment given the victim or the cause of his death. Furthermore, the trial court instructed the jury as follows on the proximate cause of death:

"INSTRUCTION 16

"To constitute murder there must be, in addition to the death of a human being, an unlawful act which was a proximate cause of that death.

"The proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred.

"There may be more than one proximate cause of a death. When the

conduct of two or more persons contributes concurrently as proximate causes of a death, the conduct of each of said persons is a proximate cause of the death regardless of the extent to which each contributes to the death. A cause is concurrent if it was operative at the moment of death and acted with another cause to produce the death.

"INSTRUCTION 17

"The fact, if it be a fact, that some other person was guilty of negligence, which was a contributory cause of the death involved in the case, is no defense to a criminal charge.

"INSTRUCTION 18

"Where the original injury is a proximate cause of the death, the fact that the immediate cause of death was the medical or surgical treatment administered or that such treatment was a factor contributing to the cause of death will not relieve the person who inflicted the original injury from responsibility.

"INSTRUCTION 19

"If a person unlawfully inflicts upon another person a physical injury which is a proximate cause of the latter's death, such conduct of the former constitutes an unlawful homicide even though the injury thus inflicted was not the only cause of the death, and although the person thus injured had been already enfeebled by disease, injury, physical condition or other cause and although it is probable that a person in sound physical condition thus injured would not have died from the injury, and although it is probable that the injury only hastened the death of the injured person and that he would have died soon thereafter from another cause or other causes."

The instructions set forth by the trial court are a correct reflection of the law. Where a person inflicts upon another a wound which is calculated to endanger or to destroy life, it is not a defense to a charge of homicide that the alleged victim's death was contributed to or caused by the negligence of the attending physicians or surgeons. The concept of intervening cause in both tort and criminal law is predicated upon foreseeability. Since human beings are not infallible, some degree of a doctor's negligence is foreseeable and cannot be used by a defendant to exonerate himself. Neither can a defendant use as a defense the possibility that different or more skillful treatment might have saved the life of the deceased, and thereby avoid the consequences of his attack. Defendant must show that erroneous or unskilled medical care became the efficient intervening cause of death and superseded the effect of the wounds inflicted by defendant so as to become the proximate cause of death. These are all jury questions. (*State v. Cox,* 82 Idaho 150, 351 P. 2d 472 [1960]; *People v. Stamps,* 8 Ill. App. 3d 896, 291 N. E. 2d 274 [1972]; *People v. Flenon,* 42 Mich. App. 457, 202 N. W. 2d 471 [1972]; Anno: "Homicide: liability where death immediately re-

sults from treatment or mistreatment of injury inflicted by defendant," 100 A. L. R. 2d 769.)

## VII. Extra-Judicial Statements

Defendant next alleges the trial court admitted irrelevant testimony. James Kalahurka testified he was a friend of the defendant and worked with him. He testified that on December 22, 1973, while at work, defendant told him that "Me and Mike hit a nigger on the head and robbed him of $80.00." He further testified that defendant owned a .22 caliber rifle. After cross-examination and redirect defendant moved to have the testimony stricken as not relevant to any issue of fact in the case. The motion was denied.

K. S. A. 60-401 (b) defines relevant evidence as "evidence having any tendency in reason to prove any material fact." All relevant evidence is admissible unless otherwise excluded by statute. (K. S. A. 60-407 [f].) We hold the testimony of Kalahurka was relevant to the case and was admissible.

## VIII. Sufficiency of Evidence

Defendant challenges the sufficiency of the evidence. He alleges the state failed to prove defendant possessed criminal intent to rob at the time he struck Collins. The felony murder rule only requires proof that a felony was attempted or committed during the course of which a homicide resulted. (K. S. A. 21-3401.) There was compelling evidence to support such a finding of guilt based on the testimony of Sharkey, the bullet tied to defendant's rifle, and the two extra-judicial statements by defendant admitting the crime.

## IX. Equal Protection and Due Process

Finally, defendant alleges he was denied due process and equal protection of law. The point appears to be an accumulation of all points previously raised and discussed. Defendant's rights were not prejudiced by any error or impropriety at trial which requires reversal.

The judgment of the trial court is affirmed.