(606 P.2d 115)

No. 51,121

STATE OF KANSAS, *Appellee*, v. RICKEY C. HAYDEN, *Appellant.*

Opinion filed February 8, 1980.

Frank R. Cobb, of Wichita, for the appellant.

Michael Barbara, assistant district attorney, Vern Miller, district attorney, and Robert T. Stephan, attorney general, for the appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

SPENCER, J.: Defendant was charged with one count of burglary, K.S.A. 21-3715, and one count of felony theft, K.S.A. 1979 Supp. 21-3701(a). He was found guilty of theft but the jury did not return a verdict on the charge of burglary. This was the second trial of defendant on these charges, an earlier trial having resulted in a hung jury.

On appeal, defendant argues (1) it was error to permit endorsement of an additional witness for the State; (2) the composition of the jury panel was such as to deny a fair and impartial trial; (3) it was error to admit certain State exhibits into evidence; and (4) the verdict forms were improper in that they permitted a finding of guilty of theft without a finding of guilty of burglary.

At trial, Mark Ewing, owner and manager of Mark's College Hill Apco Service Station in Wichita, testified he locked his station at about 7:00 p.m. on November 6, 1978, and that the police called him during the early morning hours of November 7th to inform him the station had been broken into. When he returned to the station at about 1:30 a.m. on November 7th, he found a broken window, a damaged door, and that some tires and approximately $160 in money were missing. He described the tires as "GR 78-15, Goodyear steel-belt radials, whitewall." Ewing then examined State's Exhibits 1 through 4 (the tires) and

stated: "Well, these are the tires that were removed from my shop, same size and style of tire." He also stated it was probable he had the tires six months before they were stolen; that he recognized certain marks on the tires as paint he used on his tire racks; and that he was "quite sure" the tires were stolen from his station. Ewing identified State's Exhibit 5 as "an adding machine tape that's out of my adding machine." He further testified that his trash can was located between the tire rack and the desk; that his adding machine was located on the desk; that he found State's Exhibit 5 inside one of the tires during the preliminary hearing; and that "[m]ore than likely it was thrown in for the trash can and didn't hit the trash can and got inside the tire." Defendant's objection to admission of State's Exhibits 1 through 5 was overruled.

At the end of the first day of trial, the State moved to endorse David Hollis as an additional witness, which motion was granted over defendant's objection. Defendant then lodged an objection to the composition of the jury panel, which was overruled.

Additional State's evidence indicated that in the early morning hours of November 7th, defendant, accompanied by a male and two females, parked his car in a residential area of Wichita. Defendant and his male companion walked to the service station and gained access through the back door of the locked building. Police arrived on the scene and followed defendant's car. The occupants of the car thereafter fled on foot. Police caught one of defendant's female companions, and this led to defendant's arrest. The tires were found in the back seat of a 1970 Buick automobile previously owned by David Hollis, who testified he had sold the car to defendant. Hollis also stated he had talked to defendant about November 9th concerning purchase money still owed Hollis on the car, and that defendant still had the car and was going to pay whatever he could.

The defense consisted of an alibi, defendant testifying he was sick on the night in question and did not leave his home.

On rebuttal, the State called Richard Cook, a latent fingerprint examiner with the Wichita Police Department, who identified State's Exhibit 15 as an eight by eight card with a set of rolled ink fingerprint impressions with defendant's signature on it. Cook also identified State's Exhibit 14 which had previously been identified by Detective Jonker as a "piece of mat acetate card which has a piece of fingerprint tape on it which has retained

latent prints which I did recover from the rear view mirror of the vehicle" that defendant was allegedly driving on the night in question. It was Cook's opinion that the latent prints on Exhibit 14 were the same as those of the right index and the right middle fingers of the right hand as shown on Exhibit 15. Exhibits 14 and 15 were offered. Defense counsel was permitted to examine Cook as follows:

"MR. COBB: When you took the rolled ink impressions here there was another court proceeding in progress; is that right?

"A. That is correct.

"MR. COBB: You indicated that on November the 7th, '78, you made a comparison of State's Exhibit 14. It must have been with some other rolled ink impressions; is that right?

"A. It was another set of rolled ink impressions, yes.

"MR. COBB: You did not take another set of impressions, did you?

"A. No, I did not.

"MR. COBB: Your Honor, we'll object to the admissions of Exhibit 15. It's not the original impressions that the officer used to identify or compare with Exhibit 14 taken during the progress of the previous court proceeding."

Defendant's objection was overruled and Exhibits 14 and 15 were admitted.

1. Defendant contends he was prejudiced by the late endorsement of David Hollis as a witness for the State. K.S.A. 1979 Supp. 22-3201 provides in relevant part:

"(6) The prosecuting attorney shall endorse the names of all witnesses known to said attorney upon the complaint, information and indictment at the time of filing the same. Said attorney may endorse thereon the names of other witnesses as may afterward become known to said attorney, at such times as the court may by rule or otherwise prescribe."

The right of the State to endorse additional witnesses rests within the sound discretion of the trial court and its ruling will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *State v. Rueckert,* 221 Kan. 727, 561 P.2d 850 (1977); *State v. Mitchell,* 3 Kan. App. 2d 635, 599 P.2d 1025 (1979). The test is whether the rights of the defendant were unfairly prejudiced by the endorsement. *State v. Rueckert,* 221 Kan. at 730; *State v. Taylor,* 217 Kan. 706, 538 P.2d 1375 (1975).

The motion to endorse was presented to the court outside the presence of the jury, at which time defendant and his counsel were made aware of the nature of the testimony expected from David Hollis and it was stated the witness would be made available to defense for interview prior to giving his testimony. In

ruling on the motion, the court specified that defendant was to have ample time to interview Hollis prior to his giving testimony. There is no showing of surprise or prejudice and defendant did not at any time express the need for additional time due to the late endorsement of this witness. It has not been shown how defense strategy was adversely affected. We find no abuse of discretion.

2. Defendant contends he was denied a fair and impartial trial because there was only one person of his race on the jury panel, which did not, therefore, represent a cross-section of the community. Nothing more is offered. The case of *State v. Reed,* 214 Kan. 562, 563, 520 P.2d 1314 (1974), is dispositive of this issue:

"The appellant bases his claim on the racial make-up of this one jury panel. That is not enough. Further, even if his claim were discrimination in the compilation of the master roll from which the panel was drawn, some proof would be required. A bald assertion in appellant's brief does not establish a *prima facie* case."

Defendant does not suggest or offer proof there was unlawful discrimination in the makeup of the jury panel, absent which we find no merit to this contention.

3. Defendant argues the trial court erred in admitting State's Exhibits 1 through 5 because they were "incapable of being positively identified and prosecution also failed to substantiate a complete chain of custody." Rules relevant to this issue were recently stated in *State v. Nicholson,* 225 Kan. 418, 419-420, 590 P.2d 1069 (1979):

"The admissibility of physical evidence lies within the sound discretion of the trial court and is to be determined on the basis of its relevance in connection with the accused and the crime charged. . . . Moreover, relevant evidence is defined under K.S.A. 60-401(*b*) as evidence having any tendency in reason to prove any material fact. The determination of relevancy is a matter of logic and experience, not a matter of law. . . . Furthermore, when a physical object is offered into evidence and a question arises as to its connection with either the defendant or the crime charged, unless it is clearly irrelevant, the object should be admitted for such weight and effect as the jury sees fit to give it."

See also *State v. Ponds and Garrett,* 218 Kan. 416, Syl. ¶¶ 4, 5, 543 P.2d 967 (1975). Obviously, the tires and the adding machine tape were relevant evidence if properly identified, and the record reveals sufficient identification to justify their admission into evidence.

When objects of physical evidence have been kept in police custody the chain of possession must be reasonably complete, but

this rule may be relaxed when the object is positively identified at the trial and it is established the object remains unaltered. *State v. Treadwell,* 223 Kan. 577, Syl. ¶ 2, 575 P.2d 550 (1978). A party who offers an object into evidence must show that it is reasonably certain there have been no material alterations of the object since it was first taken into custody. It is not necessary that the object should have been kept continuously under lock-and-key or continuously sealed up, nor is it necessary that all possibility of it being tampered with should be excluded. *State v. Hernandez,* 222 Kan. 175, 176, 563 P.2d 474 (1977); *State v. Beard,* 220 Kan. 580, Syl. ¶ 4, 552 P.2d 900 (1976). We find no error in the admission of State's Exhibits 1 through 5.

Defendant also argues that State's Exhibit 15, the fingerprint card, was not properly admitted into evidence because it "was taken during the course of [defendant's] first trial without defendant's consent, and was not the card originally used to compare the prints found in the course of the investigation of the crime." No authority is cited in support of this contention, nor has research revealed any. It was the duty of the police officers, immediately upon the arrest of defendant for the commission of a felony, to cause fingerprint impressions to be made pursuant to K.S.A. 1979 Supp. 21-2501, and defendant's consent was not required. It is not made clear why it should matter whether the fingerprints were taken for defendant's first or second trial. We find no merit in this argument.

4. Finally it is argued that a verdict of guilty on the charge of burglary was a "necessary prerequisite" to a verdict of guilty on the charge of theft. This contention assumes that inconsistent verdicts are improper. It is a well-settled rule that even though verdicts may appear irreconcilable, a conviction will not be reversed on grounds of inconsistency. *State v. Goering,* 225 Kan. 755, Syl. ¶ 6, 594 P.2d 194 (1979); *State v. Shultz,* 225 Kan. 135, Syl. ¶ 8, 587 P.2d 901 (1978); *State v. McCorgary,* 218 Kan. 358, 366, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976).

Affirmed.