(606 P.2d 1035)

No. 50,607

No. 50,640

STATE OF KANSAS, *Appellee,* v. JACK D. BOSTER, *Appellant,* and STATE OF KANSAS, *Appellee,* v. RAY A. WINTERS, *Appellant.*

Opinion filed February 15, 1980.

*Kenneth P. Rockhill,* of Eureka, for appellant Boster; and *Ronald C. Myers,* of Eureka, for appellant Winters.

*Donald H. Shoop,* county attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

MEYER, J.: This is an appeal by the defendant, Jack D. Boster (Boster), from his conviction of possession of burglary tools in violation of K.S.A. 21-3717, and an appeal by the defendant, Roy A. Winters (Winters), from a conviction of the same crime, plus convictions for the unlawful possession of a firearm within five years after conviction of a felony (K.S.A. 21-4204[1][*b*]), and for unlawful possession of a firearm by a narcotics addict (K.S.A. 21-4204[1][*a*]).

The city marshal of Madison, Kansas, during the night of June 22, 1978, observed two men running down an alley behind the Pope Drug Store in that city. He gave pursuit in his patrol car but momentarily lost sight of them. He regained sight of the two men, one of whom ran off, while the other slowed to a walk. It developed these two men were Winters and Boster. Winters, the

one who had slowed to a walk, was stopped by the marshal. He was frisked and found to have a pair of gloves and a flashlight. Winters advised the officer he had had car trouble and took the marshal back to the car, voluntarily opened the trunk, and showed him a flat tire. The marshal also observed a crowbar and "paraphernalia" in the trunk. At that time the marshal arrested Winters and called the Greenwood County sheriff to aid in the search for the other defendant. The sheriff looked behind Pope Drug Store and noticed a screen had been cut and that the latch on the screen had been opened. The sheriff then went back to the Winters vehicle and discovered Boster lying in the back seat. He thereupon took Boster into custody. A search warrant was obtained the following day and a search of the car revealed locksmith tools, certain drug paraphernalia, and other equipment.

Winters was charged with possession of burglary tools, attempted burglary, possession of a firearm within five years of conviction of a felony, and possession of a firearm by a narcotics addict.

Boster was charged in a separate information with possession of burglary tools and attempted burglary.

The State moved for consolidation of the two cases for trial and the court granted consolidation over the objection of the defendants. The jury acquitted both defendants of attempted burglary but convicted each of them on all other counts charged.

Defendants' first claimed error is that the district court erred in holding that the affidavit attached to the complaint in this matter established probable cause and was sufficient to authorize the issuance of a warrant for arrest.

They cite *Wilbanks v. State,* 224 Kan. 66, 579 P.2d 132 (1978), for the proposition that in order for an arrest warrant to be valid there must be sufficient information from which a neutral and detached magistrate could determine probable cause. While we feel the affidavit and warrant contained sufficient information within themselves to determine probable cause, it is noted that both defendants were arrested without a warrant and that the warrant complained of was issued following those arrests. The requirements for an arrest warrant in the Fourth Amendment and Article 15 of the Kansas Bill of Rights go to the legality of the arrest. See *Giordenello v. United States,* 357 U.S. 480, 2 L.Ed.2d 1503, 78 S.Ct. 1245 (1958); and *Whitely v. Warden,* 401 U.S. 560,

28 L.Ed.2d 306, 91 S.Ct. 1031 (1971). The legality of the arrests in the instant case, therefore, depends not upon whether the warrant was proper, but upon whether there was probable cause for the arresting officers to make the arrests without a warrant.

In *State v. Curtis,* 217 Kan. 717, 721, 538 P.2d 1383 (1975), the Court states:

"The basic question presented is whether Officer Parks had probable cause to arrest defendant. K.S.A. 22-2401(*c*)(1) provides, *inter alia,* that a law enforcement officer may arrest a person when he has probable cause to believe that the person has committed a felony. The provisions of the statute referred to simply codify the existing case law of this jurisdiction authorizing the warrantless arrest for a felony if the officer has probable cause."

We conclude that under the facts of this case there was probable cause for the warrantless arrests and that the arrests were valid. Moreover, even if the warrant was invalid and the arresting officer lacked probable cause for arrest, the defendants have shown no substantial rights which were prejudiced as a direct result of unlawful arrest.

"[J]urisdiction of a court to try a person accused of a crime is not divested by the fact he may have been unlawfully arrested." *State v. Addington,* 205 Kan. 640, 644, 472 P.2d 225 (1970).

Further, "[u]nless a defendant's substantial rights are prejudiced as a direct result of an unlawful arrest, such as the use of evidence seized at the time, his arrest will not vitiate his subsequent conviction." 205 Kan. at 645. See also *State v. Stephenson,* 217 Kan. 169, Syl. ¶ 1, 535 P.2d 940 (1975).

Winters complains that the court erred in failing to sustain his motion for suppression of the evidence because the affidavit for the search warrant was insufficient to show probable cause and because of defective and duplicitous returns. We are not persuaded by either of these arguments.

The affidavit for search warrant contained sufficient facts from which the magistrate could conclude there was probable cause to believe that the automobile contained contraband. It showed from whom and by what means the affiant obtained his information and what that information consisted of. The rule involving search warrants is set out in *State v. Hart,* 200 Kan. 153, 162, 434 P.2d 999 (1967), wherein it is stated:

"[B]efore a search warrant may validly be issued, there must have been placed before the issuing magistrate sufficient facts to enable him to make an intelligent

and independent determination that probable cause exists; that bald conclusions or mere affirmations of belief or suspicion are not enough; and while an affidavit may be based on hearsay, there must be sufficient affirmative allegations as to the affiant's personal knowledge or his knowledge concerning his informant, or as to the informant's personal knowledge of the things about which the informant spoke, to provide a rational basis upon which the magistrate can make a judicious determination of probable cause."

See also *State v. Sanders,* 222 Kan. 189, 192, 563 P.2d 461 (1977).

As to the adequacy of the return of the search warrant and of the duplicitous nature of it, K.S.A. 22-2511 states:

"No search warrant shall be quashed or evidence suppressed because of technical irregularities not affecting the substantial rights of the accused."

There was testimony to the effect that a return was left in the vehicle and a copy of the search warrant was left with Winters at the county jail. Apparently the trial court believed this testimony. As to the duplicitous returns complained of by defendants, we note the only difference between the returns is that the same items were referred to by different names. The items were, however, clearly identifiable and the returns, in effect, said the same thing. Further, there is no indication that defendants were surprised in any way by the admission of the seized evidence and the trial court made a specific finding that no prejudice resulted to their rights.

Defendants claim error in the consolidation of their cases. This claim of error also lacks merit. The court, in *State v. Coe,* 223 Kan. 153, 157-158, 574 P.2d 929 (1977), states:

"Although 22-3204, *supra,* is silent concerning the power of the trial court to consolidate trials on the motion of one or more of the defendants, the trial court has such inherent authority. The underlying purpose of the statute is to provide the defendant a fair trial without undue delay. The trial court is vested with broad discretion to achieve this goal."

In *State v. Coe,* the trial court denied defendants a joint trial, whereas in the instant case the trial court ordered the consolidation over the objection of the defendants. We deem *State v. Coe* to be sufficient authority for the trial court to consolidate the trial of the two defendants herein. We conclude, also, that same is a matter discretionary with the trial court, and will not be disturbed absent abuse of discretion. In *State v. Rueckert,* 221 Kan. 727, 561 P.2d 850 (1977), defendants were jointly charged and it was held by the court that: "When two or more defendants are jointly

charged with a crime the granting of a separate trial for any one defendant lies within the sound discretion of the trial court. (K.S.A. 22-3204)." 221 Kan. 727, Syl. ¶ 2. The *Rueckert* court states: "A defendant does not have the right to be tried with or separate from a codefendant if no prejudice to his rights can be shown." 221 Kan. at 730-731. We find this to be further authority for the trial court to consolidate the trials of two defendants, even where they are charged in separate informations.

It is noted that Winters was charged with possession of a firearm by a felon and possession of a firearm by a narcotics addict, whereas Boster was charged with neither of these two offenses. The district court stated it felt the consolidation actually favored the defendants. The pistol and the drug paraphernalia were found in the same car where Boster was found and apprehended. We find no abuse of discretion.

In addition to the issues heretofore decided, which we deem applicable to both Winters and Boster, Winters claims the court erred in permitting the .25-caliber American automatic pistol to be admitted into evidence because it was not a firearm under K.S.A. 21-4204. He claims the instrument was not a firearm under the statute because it was in the locked trunk of the automobile, that no ammunition was found, and that there was no clip for the weapon. Most cases dealing with the definition of a firearm have decided the question under statutes other than ones prohibiting possession of a firearm by a felon or a drug addict. Under statutes prohibiting the carrying of a concealed, dangerous weapon, it appears the majority of cases hold that the fact that a firearm is unloaded does not take the firearm out of the purview of the statute. See Annot., 79 A.L.R.2d 1412. Representative of these decisions is *Commonwealth v. Harris,* 344 S.W.2d 820, 821 (Ky. 1961), where it was held:

"[A] gun mechanically capable of being fired is a deadly weapon within the meaning of [the statute forbidding carrying of concealed deadly weapons], though it be unloaded and though there be no ammunition upon the carrier's person or so near to him as to make it readily available."

The court in *Harris* noted that ammunition is rarely unavailable.

Evidence establishing that a weapon was an operating instrument and capable of firing a bullet was not necessary to support a conviction under K.S.A. 21-2611, a predecessor statute to the one now in question, which made it unlawful for one previously

convicted of burglary to own a pistol (statutorily defined by K.S.A. 21-2610 as a firearm having a barrel less than twelve [12] inches), or to have or keep a pistol in his possession, or under his control. *State v. Omo,* 199 Kan. 167, 428 P.2d 768 (1967); *State v. Bolin,* 200 Kan. 369, 436 P.2d 978 (1968). Furthermore, a pistol need not contain a clip in order for it to be fired.

There are two recent cases of our Supreme Court which have considered the definition of "firearm" as used in our mandatory sentencing statute, K.S.A. 1979 Supp. 21-4618. In *State v. Deutscher,* 225 Kan. 265, 589 P.2d 620 (1979), where it was held an unloaded revolver is a firearm within the meaning of that statute, it is said:

"We note the word 'firearm' is used in the statute without further definition. The appellant argues there was no firearm used in this case since the only evidence introduced established the .357 magnum revolver was unloaded and the defendant had access to no live ammunition. Appellant points to several cases from other jurisdictions holding that a weapon incapable of firing a bullet does not constitute a 'firearm.' These cases are not applicable here. In this case there was evidence the revolver had been and was capable of being used for target practice. The failure of the officers to find live ammunition within reach of the defendant when he was stopped does not make the revolver any less a firearm. It was capable of discharging a bullet. We have no reason in the present case to inquire into different fact situations where a particular revolver is not mechanically capable of firing a bullet. Such was not the case here. We leave that question for future decision in some case with a suitable fact situation to justify resolution of that question." (pp. 272-273.)

In a case where it was held the weapon was not a firearm (*State v. Davis,* 227 Kan. 174, 605 P.2d 572 [1980]), is found the following:

"The weapon was described as a .22 caliber blank gun which was incapable of firing a projectile because the barrel was blocked by a piece of metal." (p. 175.)

"The second issue raised by the appellant is whether the starter pistol was a 'firearm' within the meaning of K.S.A. 1978 Supp. 21-4618 . . . ."

. . . . .

"We specifically deferred to future consideration of this issue in *State v. Deutscher,* 225 Kan. at 272-73, wherein we held an unloaded revolver was a 'firearm.' Kansas statutes do not define 'firearm.'

"The State contends the trial court properly found the starter pistol was a firearm based on examination of the gun, the gun's use during the crime, and the victim's perception of the gun. The appellant contends the finding was erroneous because criminal statutes must be construed strictly against the State and in favor of the defendant. *State v. Stuart and Jones,* 223 Kan. 600, 575 P.2d 559 (1978).

"After reviewing the decisions from other jurisdictions which have dealt with this issue we find but one logical conclusion. A firearm is consistently defined in

terms of its design or capacity to propel a projectile by force of an explosion, gas, or other combustion. See *People v. Norton,* 80 Cal. App. 3d Supp. 14, 146 Cal. Rptr. 343 (1978); *Schmit v. Guidry,* 204 So. 2d 646 (La. 1967); *State v. Millett,* 392 A.2d 521 (Me. 1978); *Coleman v. State,* 506 P.2d 558 (Okla. Crim., 1972); *State v. Hash,* 34 Or. App. 281, 578 P.2d 482 (1978); *Commonwealth v. Layton,* 452 Pa. 495, 307 A.2d 843 (1973). See also Black's Law Dictionary 761 (4th ed. rev. 1968). It was stipulated that the appellant's starter pistol lacked the capacity to propel a projectile. In light of the definition adopted herein, the trial court erroneously determined the pistol was a firearm. See *State v. Taylor,* 225 Kan. 788, 795, 594 P.2d 211 (1979); *State v. McCarty,* 224 Kan. 179, Syl. ¶ 1, 578 P.2d 274 (1978)." pp. 177-78.

We hold the definition of "firearm" adopted in *Davis,* "an object having the design or capacity to propel a projectile by force of an explosion, gas or other combustion," (227 Kan. 174, Syl. ¶ 2) applicable to K.S.A. 21-4204, and the .25-caliber automatic pistol was a firearm.

Winters' contention that the court erred in not sustaining his motion for acquittal at the close of the State's case lacks merit. His contention as to this issue is that there was insufficient evidence to show possession of the firearm, and that there was no evidence to show that he was a narcotics addict.

"Intent may be established by circumstantial evidence." *State v. Goodman,* 3 Kan. App. 2d 619, 627, 599 P.2d 327 (1979). In that case, a gun was found in defendant's car and the court held that there was sufficient circumstantial evidence from which the jury could infer an intent to willfully and knowingly possess the firearm, even though there was evidence that there might have been two or more persons occupying the vehicle before it was discovered abandoned.

In *State v. Hart,* 200 Kan. 153, burglary tools were found in defendant's car and this was found sufficient evidence to support possession by the owner of the car. It was stated in that case:

"The possession of tools or instruments designed or commonly used in the commission of burglaries may be joint as well as individual, and where two or more persons have the power of control over the use of such tools or instruments and have the intent to control and use them jointly, all of them will be criminally liable under the statute." 200 Kan. 153, Syl. ¶ 8.

"Proof of intent to use, for burglarious purposes, tools which are commonly employed in committing burglaries may be inferred from the circumstances which attend their possession, such as prior burglary convictions, concealment of the tools on one's person or in his clothing, resistance to arrest, and possession of other items not suitable for breaking but which might be generally useful to one engaging in burglarious pursuits." 200 Kan. 154, Syl. ¶ 12.

The standard of review in criminal convictions is whether the evidence when viewed in the light most favorable to the prosecution convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. See *State v. Henderson,* 226 Kan. 726, 603 P.2d 613 (1979); *State v. McGhee,* 226 Kan. 698, 602 P.2d 1339 (1979).

A review of the record discloses there was sufficient evidence of possession of the firearm and Winters' addiction to narcotics to support the verdict.

Affirmed.