No. 18,637.

THE STATE OF KANSAS, *Appellee,* v. H. C. BLOOM,
*Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Charge of Murder—Instructions—Degrees of Manslaughter.* On the trial of one charged with murder in the first degree an instruction should be given defining and submitting to the consideration of the jury every crime included in such charge of which there is any evidence.

2. ——— *Request for Instruction—Not .Too Late.* If, in such case, a request for a proper instruction is made before the charge of the court is given to the jury, it should not be refused on the sole ground of being out of time, notwithstanding any rule of court, but should be considered, and given or refused on its merits. .

3. ——— *Evidence — Degrees of Manslaughter Included.* In this case there was evidence which entitled the accused to an instruction defining manslaughter in the fourth degree, as well as in the third degree, and the question of his guilt or innocence as to each of such degrees should have been submitted to the jury.

Appeal from Clark district court; GORDON L. FIN-LEY, judge. Opinion filed December 6, 1913. Reversed.

*Frank L. Martin,* and *Van M. Martin,* both of Hutchinson, for the appellant.

*John S. Dawson,* attorney-general, *H. R. Daigh,* county attorney, and *A. B. Reeves,* of Dodge City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant was charged with the crime of murder in the first degree. Upon his trial he was convicted of the crime of manslaughter in the third degree. Numerous assignments of error are made, but as the case is to be remanded for a new trial,

we need only to discuss such questions as will probably arise on a second trial. Of these, perhaps the principal question is whether the court erred in refusing to give a requested instruction defining the crime of manslaughter in the fourth degree, and in not submitting to the jury a form of verdict for that degree as well as the instruction defining the crime of manslaughter in the third degree and submitting a form of verdict for that degree, as it did.

Manslaughter in the third degree is defined in section 18 of the crimes and punishments act as follows:

"The killing of another in the heat of passion, without design to effect death, by a dangerous weapon, in any case except wherein the killing of another was justifiable or excusable, shall be deemed manslaughter in the third degree." (Gen. Stat. 1909, § 2506.)

Section 26 of the same act defines manslaughter in the fourth degree as follows:

"The involuntary killing of another by a weapon, or by means neither cruel nor unusual, in the heat of passion, in any cases other than justifiable homicide, shall be deemed manslaughter in the fourth degree." (Gen. Stat. 1909, § 2514.)

It will be observed that, with the exception of the words "neither cruel nor unusual," used in the latter definition and not in the former, and which may properly be disregarded as inapplicable to this case, the chief distinction between the degrees of manslaughter is the word "dangerous" before the word "weapon," used in the definition of third-degree manslaughter and not in the definition of the fourth degree. This difference, however, may be very material in the case, accordingly as a jury might view the evidence.

The definition given in 30 A. & E. Encycl. of L. 443, 2 Words & Phrases, pp. 1828, 1829, 13 Cyc. 257, and some other law writers, of a "dangerous weapon," being taken from the decisions of various courts, is, one calculated or designed to inflict death or great bodily harm,

or, by the manner in which it is used, is likely to produce death or great bodily harm. Some courts, also, give practically the same definition to the word "weapon." All of the courts, however, recognize that a weapon may be dangerous from the very design of its make, as a gun or sword, while any object that may be used to inflict injury upon another, offensively or defensively, may be a dangerous weapon in the manner in which it is used. For instance, one authority (*State v. Norwood*, 115 N. C. 789, 20 S. E. 712), holds that a pin thrust down the throat of an infant, causing death, constitutes a killing with a deadly weapon. It is said that where a weapon is in itself a dangerous weapon, that it is the province of the court to so tell a jury in a criminal trial, whereas if the weapon is dangerous or not according to its use is a question for the jury.

It is evident that our legislature, in defining the two crimes, wherein practically the only distinction is that the killing in the one should be by a *dangerous* weapon and in the other by a weapon, recognized the distinction that in one case the weapon should be dangerous in itself and in the other that it became dangerous only as used. The manner of the use is clearly to be determined as a fact by the jury.

Upon the argument of the case in this court, the appellant's counsel exhibited a small knife, commonly known as a pen-knife, which he said was the only knife in the possession of the appellant at the time of the difficulty, and also said it was the knife exhibited to the jury at the trial. Counsel for the state, being present, made no objection to the statement. Assuming, then, that this was the evidence before the jury, it can not be said as a matter of law that the knife, in itself, was designed to inflict death or great bodily harm upon an adversary. Neither can we say that it could not have been considered by the jury simply as a weapon, within the meaning of that word as used in the statutory definition of manslaughter in the fourth degree.

The State v. Bloom.

Counsel for appellant first requested an instruction to the jury, in substance, that under the evidence in this case the only question for the consideration of the jury was whether the defendant was guilty or not guilty of manslaughter in the third degree. This request was refused by the court, but the court thereafter gave the jury an instruction defining manslaughter in the third degree in accordance with the statute and submitted to the jury only two forms of verdict, one of which was to be used in case they found the defendant not guilty, and the other was to be used in case they found the defendant guilty of the crime of manslaughter in the third degree in accordance with the definition given of that degree.

Counsel for appellant submitted to the court an instruction defining manslaughter in the fourth degree, as defined in the statute, and asked that the instruction be given and a form of verdict submitted to the jury in accordance therewith. This request was refused, on the ground that it was too late, although it was made before the jury retired to consider their verdict.

We think the appellant was entitled to have the requested instruction given and to have a form of verdict in accordance therewith submitted for the determination of the jury; also, that the request was not made too late. (*The State v. Clark,* 69 Kan. 576, 77 Pac. 287.) No rule of court or order of procedure should be technically followed to deprive a defendant on trial for a grave crime of any right under such circumstances. (Crim. Code, §§ 236, 237.)

The appellant also requested the court at the same time to give a proper instruction in regard to circumstantial evidence, substantially that the jury should take into consideration in determining the guilt or innocence of the defendant all the circumstances surrounding the transaction as shown by the evidence. This instruction was also refused for the same reason. It should have been given. Exceptions were timely made

to the refusal to give each instruction, and the motion for a new trial fairly embraced both questions. In overruling the motion for a new trial, the court remarked that the two instructions, respectively, relating to manslaughter and circumstantial evidence, were requested at the time the court was about to read his instructions to the jury.

The judgment is reversed and the case is remanded for a new trial.