No. 49,983

STATE OF KANSAS, *Appellee,* v. SIDNEY DEUTSCHER, *Appellant.*

(589 P.2d 620)

Opinion filed January 20, 1979.

*John C. Humpage,* of Topeka, argued the cause and was on the brief for the appellant.

*Kenneth L. Weltz,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Sidney Deutscher was convicted by a jury of aggravated assault on a law enforcement officer (K.S.A. 21-3411) and he was sentenced to serve a minimum of one (1) year without the privileges of suspension of sentence, probation, or parole by reason of the imposition of the mandatory sentencing statute, K.S.A. 1977 Supp. 21-4618. On appeal Deutscher raises four primary questions: (1) Is an unloaded revolver a deadly weapon within the meaning of K.S.A. 21-3411? (2) Is an intent to do bodily harm a necessary element of an aggravated assault charge? (3) Was the evidence introduced in this case sufficient to establish

venue jurisdiction? (4) Is an unloaded revolver a firearm within the meaning of the mandatory sentencing statute, K.S.A. 1977 Supp. 21-4618?

The evidence at the trial was surprisingly free of conflicts. The two principal characters in this drama were Sidney Deutscher, an 18-year-old man who lived in Ellis, Kansas, and Michael Weigel, a 24-year-old city police officer. There had been prior unpleasant confrontations between Weigel and Deutscher. At one time Deutscher had been arrested for disorderly conduct and for resisting arrest. That arrest was accomplished after a physical encounter between these two at which time it was alleged by Weigel that Deutscher threatened to shoot him with a rifle. These confrontations included "hot discussions," name calling, and ill will openly displayed in public. Two weeks before the incident which led to defendant's present conviction the defendant's father talked with the mayor and chief of police of the city of Ellis in an effort to avert more serious conflicts between his son and Officer Weigel. Viewed in retrospect this visit accomplished nothing.

Three incidents occurring during the early morning hours of July 23, 1977, led to defendant's arrest and present conviction. The first occurred at a gas station in Ellis, Kansas, at 1:30 a.m. Officer Weigel drove past the station while on routine patrol of the city streets. The defendant and several friends were at the gas station. They had been drinking. They shouted obscenities at the officer as he drove by the station. Officer Weigel called for "backup" help from the sheriff's office and then proceeded to issue citations for disorderly conduct.

A second incident occurred a short time later that same morning. Officer Weigel was called to his home to investigate a reported fire. A fire had been started in a pickup truck owned by Weigel which was parked near his house. The fire was extinguished. No one has been charged as a result of the incident. The defendant and a companion appeared at the scene before Weigel had extinguished the fire.

The third incident occurred at 3:00 a.m. that same morning. Officer Weigel was in uniform and driving a marked patrol vehicle. He drove east on Tenth Street. The defendant was driving his pickup truck west on Tenth Street. As the two vehicles passed, the defendant pointed a .357 magnum revolver at Officer

Weigel. No shots were fired. Defendant appeared to be smiling. Weigel testified he thought the gun was loaded and Deutscher was going to shoot him. It scared him so much he "ducked" and then radioed the sheriff's office for help. The defendant was apprehended by the sheriff's officers within a few blocks and he was placed under arrest for aggravated assault on a law enforcement officer.

During a search of defendant's vehicle the defendant told one officer that what he was looking for was under the seat. A .357 magnum revolver and two boxes of empty casings were discovered by the officer under the front seat of the pickup truck. Live ammunition was not found in the truck or on defendant's person.

The defendant was transported to the police station, given the *Miranda* warnings, and he signed a written statement admitting that he pointed the revolver at Officer Weigel. At the trial Deutscher testified the gun was unloaded, that he normally carried the gun in his pickup, and that it was used for target practice. He further testified he knew the gun was empty when he pointed it at the officer, he had no intent to hurt anyone, and he pointed the gun at the officer as a foolish prank.

With this factual background in mind let us turn to the three criminal statutes which bear upon a charge of aggravated assault on a law enforcement officer. K.S.A. 21-3408, simple assault, provides:

"An assault is an intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm. No bodily contact is necessary."

K.S.A. 21-3410, aggravated assault, in pertinent part provides:

"Aggravated assault is:
"(*a*)  Unlawfully assaulting or striking at another with a deadly weapon; or"

K.S.A. 21-3411, aggravated assault on a law enforcement officer, provides:

"Aggravated assault of a law enforcement officer is an aggravated assault, as defined in section 21-3410, committed against a uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of his duty."

With these statutes in mind we turn to our first question. Is an unloaded revolver as displayed and used in this case a deadly weapon within the meaning of K.S.A. 21-3411? The term "deadly

weapon" appears in the aggravated assault statute, K.S.A. 21-3410, and is carried into 21-3411 by reference. The appellant points out that there is a split of authority existing among other jurisdictions as to whether a handgun is a deadly weapon when it is unloaded. He urges this court to adopt what is said to be the majority rule, *i.e.,* that an assault with a dangerous or deadly weapon cannot be committed with an unloaded firearm even if the person thus assailed is thereby put in apprehension of an attack upon his body or life.

The split of authority on this question is discussed in 6 Am. Jur. 2d, Assault and Battery § 54, p. 51, and in Annot: Unloaded Gun—Criminal Responsibility, 79 A.L.R.2d 1412. Although it would appear the numerical majority of jurisdictions hold that an unloaded gun is not a deadly weapon, there is substantial authority to the contrary. *Bass v. State,* 232 So. 2d 25 (Fla. App. 1970); *Commonwealth v. Henson,* 357 Mass. 686, 259 N.E.2d 769 (1970); *People v. Williams,* 6 Mich. App. 412, 149 N.W.2d 245 (1967).

There are no Kansas cases dealing with the specific problem of whether the pointing of an unloaded gun at someone is "assaulting or striking at another with a deadly weapon." It has been held under the old Kansas assault statute that such conduct may constitute a simple assault. *State v. Archer,* 8 Kan. App. 737, 54 Pac. 927 (1898). Whether an unloaded gun constitutes a deadly weapon is, however, a different question.

In *State v. Mitchell,* 220 Kan. 700, 556 P.2d 874 (1976), this court considered a similar question involving aggravated robbery under K.S.A. 21-3427. The court concludes in syllabus five that, "One can be convicted of aggravated robbery by means of a dangerous weapon or deadly weapon, notwithstanding the fact the gun allegedly used was unloaded." In *State v. Omo,* 199 Kan. 167, 174, 428 P.2d 768 (1967), we hold that a defendant can be convicted of felony possession of a pistol under K.S.A. 21-2611 without proof the pistol was actually capable of firing. The court explains:

"K.S.A. 21-2610 defines a pistol as a certain type of firearm. . . . A pistol is a deadly weapon *per se.* Defendant states in his brief the pistol was 'a rather dog-eared specimen at best.' Such argument, if proper at all, should have been addressed to the trier of the fact to whom the pistol was submitted as an exhibit for consideration as a firearm."

The same result with regard to a sawed-off shotgun was arrived at in *State v. Sullivan & Smith*, 210 Kan. 842, 848, 504 P.2d 190 (1972).

Appellant offers several theories to distinguish *Mitchell* from the present case. First, appellant notes that *Mitchell* involved an aggravated robbery conviction under K.S.A. 21-3427. Appellant argues that aggravated robbery under 21-3427 occurs if the robber is armed with a "dangerous weapon," whereas aggravated assault under K.S.A. 21-3410 occurs if the assaulter uses a "deadly weapon." Appellant asserts there is a difference and by using these different terms the legislature intended different meanings. Appellant also asserts that under a rule of statutory construction the legislature is presumed to use words in their ordinary sense and the phrase "deadly weapon" must mean a weapon capable of then causing death. He then asserts an unloaded gun is not capable of causing death if it is merely pointed at a person.

Such a distinction between a deadly weapon and a dangerous weapon is tenuous at best. Previously this court has used the two terms synonymously; at least this was true when this court interpreted the aggravated robbery statute. See syllabus five of *State v. Mitchell*, 220 Kan. 700.

Appellant next seeks to distinguish *Mitchell* on the basis that the two crimes, robbery and assault, are different. The alleged difference being that the gravamen of an assault is an attack with the *present ability* to do bodily harm, while the gravamen of robbery is a taking by force or fear with the *apparent ability* to do bodily harm. Support for this distinction is found in some of the case law of other jurisdictions. However, such a distinction is not viable in face of the wording of our assault statute, K.S.A. 21-3408, which requires only *apparent ability* to do bodily harm. *State v. Warbritton*, 215 Kan. 534, Syl. ¶ 2, 527 P.2d 1050 (1974); *State v. Gauger*, 200 Kan. 515, 524, 438 P.2d 455 (1968). It would appear that the purpose of the aggravated assault statute and of the aggravated robbery statute is to provide an enhanced penalty where a deadly or dangerous weapon is used. The two words appear to be used interchangeably.

In the early case of *State v. Bloom*, 91 Kan. 156, 136 Pac. 951 (1913), this court struggled with the question of what constituted a dangerous weapon when the charge was under a statute making it manslaughter where death was effected by a "dangerous

weapon" as distinguished from a charge under another manslaughter statute where the killing was by a "weapon." In *Bloom* our court stated that the difference in wording would be very material in how a jury might view the evidence. However, the court stated that a weapon may be dangerous from the very design of its make, as a gun or sword, while any object that may be used to inflict injury upon another may be a dangerous weapon in the manner in which it is used. The court concluded that as used in the statute a dangerous weapon was one which was dangerous because of the very design of its make.

Whether a particular weapon falls within the statutory term, dangerous weapon, depends in large part upon the intent of the legislature. *State v. V.F.W. Post No. 3722,* 215 Kan. 693, 695, 527 P.2d 1020 (1974). Where no definition of the term has been provided in the statute it rests with this court to construe the term based upon the nature and purpose of the statute in which it is used. The nature and purpose of the statute is of primary importance. See *Parman v. Lemmon,* 120 Kan. 370, 244 Pac. 227 (1926).

In *Gauger,* 200 Kan. at 524, this court stated:

"An assault, although not defined by statute, has been described as an attempt or offer with force or violence to do corporal injury to another without the actual doing of the injury threatened, and neither actual intent nor actual present ability to do the injury threatened is necessary if the circumstances are such that the person threatened reasonably believes the injury will be done."

The additional requirement of "assaulting or striking at another with a deadly weapon" in the aggravated assault statute is the basis for an enhanced penalty. An aggravated assault must be considered in light of the elements of the crime of simple assault. The simple assault statute requires only an apparent ability, not a present ability, to do bodily harm. In construing the aggravated assault statute if this court should hold a revolver is not a deadly weapon until it is loaded and capable of firing a bullet the court would be requiring the additional element of present ability to do bodily harm, which element is not found in any of the three assault statutes previously referred to herein.

If the legislature intended the term "deadly weapon" to be limited to those weapons having a present ability to do bodily harm they could have so provided in K.S.A. 21-3410 and 21-3411. Accordingly we must hold an unloaded revolver which is pointed in such a manner as to communicate to the person threatened an

apparent ability to fire a shot and thus do bodily harm is a deadly weapon within the meaning expressed by the legislature in the assault statutes, K.S.A. 21-3408, 21-3410, and 21-3411.

Our conclusion in this regard disposes of a secondary contention of the appellant that the trial court erred in not withdrawing the charge of aggravated assault from the jury's consideration.

The next question is whether an intent to do bodily harm is a necessary element of an aggravated assault charge. Appellant argues that one of the elements of the crime of assault as defined in K.S.A. 21-3408 is "an intentional threat or attempt to do bodily harm to another." He points out that this requirement of 21-3408 has been carried into K.S.A. 21-3410 and 3411. Appellant also points out that under K.S.A. 21-3110 (24) "threat" means a communicated intent to inflict physical or other harm on any person or on property. On this basis appellant concludes the assault statutes require an intent on the part of the accused to inflict physical harm on another person. He argues that the evidence wholly failed to establish such an intent.

The statute, K.S.A. 21-3408, is written in the alternative. An assault may result from an intentional threat or it may result from an intentional attempt. In either case the threat or the attempt must be to do bodily harm to another coupled with an apparent ability to do such harm. The present circumstances limit the assault to a threat. There was no attempt to do bodily harm. So the question we must decide is whether the accused in this case must have intended bodily harm or whether the accused only had to intend to communicate a threat such as would cause the victim to have an immediate apprehension of bodily harm.

This court has previously held "assaulting or striking at another with a deadly weapon" as proscribed by K.S.A. 21-3411 does not require a particular intent, only general criminal intent is required. *State v. Farris,* 218 Kan. 136, Syl. ¶ 4, 542 P.2d 725 (1975). General criminal intent may be proven by establishing that the conduct of the accused person was willful or wanton. Conduct is willful if it is purposeful and intentional and not accidental. K.S.A. 21-3201.

Accordingly no particular criminal intent is required in K.S.A. 21-3411 and if the particular assault consists of intentionally threatening an officer by pointing a deadly weapon at him or her the actor needs only to intend to communicate to his victim a

threat to do bodily harm. The actor must have the apparent ability to injure his victim and the threat must result in immediate apprehension of bodily harm. The actor does not have to intend to injure his victim and he does not have to have the actual present ability to injure his victim.

The next question is whether the evidence was sufficient to establish venue jurisdiction in Ellis County.

It is not necessary to prove the jurisdictional facts of venue by specific questions and answers to establish the county in which the offense occurred. *State v. Roy,* 203 Kan. 606, 455 P.2d 512 (1969). Under K.S.A. 60-409 the trial court can take judicial notice that the city of Ellis is within the territorial boundaries of Ellis County. *State v. Neil,* 203 Kan. 473, 476, 454 P.2d 136 (1969). Venue is a fact to be determined by the jury and may be proven by circumstantial evidence. *State v. Pencek,* 224 Kan. 725, Syl. ¶ 5, 585 P.2d 1052 (1978). A review of the record in this case indicates the crime occurred in the city of Ellis. The trial court in Ellis County could take judicial notice that the city of Ellis is located in Ellis County.

The final question is whether an unloaded revolver is a firearm within the meaning of the mandatory sentencing statute. K.S.A. 1977 Supp. 21-4618 provides:

"Probation shall not be granted to any defendant who is convicted of the commission of any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which the defendant used any firearm in the commission thereof and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime. This section shall apply only to crimes committed after the effective date of this act."

We note the word "firearm" is used in the statute without further definition. The appellant argues there was no firearm used in this case since the only evidence introduced established the .357 magnum revolver was unloaded and the defendant had access to no live ammunition. Appellant points to several cases from other jurisdictions holding that a weapon incapable of firing a bullet does not constitute a "firearm." These cases are not applicable here. In this case there was evidence the revolver had been and was capable of being used for target practice. The failure of the officers to find live ammunition within reach of the defendant when he was stopped does not make the revolver any less a firearm. It was capable of discharging a bullet. We have no reason in the present case to inquire into different fact situations

where a particular revolver is not mechanically capable of firing a bullet. Such was not the case here. We leave that question for future decision in some case with a suitable fact situation to justify resolution of that question.

We hold that the use by a defendant of a firearm in the commission of any crime set out in Article 34 of Chapter 21 of the Kansas Statutes Annotated requires the imposition of a mandatory sentence as provided in K.S.A. 1977 Supp. 21-4618, regardless of whether the firearm is loaded or unloaded.

The judgment is affirmed.