NOT DESIGNATED FOR PUBLICATION

No. 113,339

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM PATRICK SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; EDWARD E. BOUKER, judge. Opinion filed December 29, 2017. Affirmed in part, reversed in part, and remanded.

*Heather R. Fletcher*, of Kennedy Berkley Yarnevich & Williamson Chartered, of Hays, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and ATCHESON, JJ.

PER CURIAM: William Patrick Smith was charged with one count of driving under the influence of alcohol or drugs (DUI) and one count of DUI test refusal. The district court denied Smith's motion to suppress statements he made to law enforcement officers at the scene of the arrest, as well as his later motions for a directed verdict and for judgment notwithstanding the verdict. The jury found him guilty as charged. Smith timely appeals. Because the State concedes that prosecutorial error prejudiced Smith's right to a fair trial, we reverse and remand for a new trial.

1

*Factual and procedural background*

In the early morning hours of March 22, 2014, a witness called 911 to report a potential impaired driver in a rural area in Ellis County. The witness stated he saw a white pickup truck drive into the ditch and then back out again onto the road. The witness turned his vehicle around and followed the pickup into Pfiefer, while remaining on the phone with 911 dispatch. He reported that the truck went all over the road, from ditch to ditch, and would speed up and slow down. The witness reported seeing the pickup turn into a driveway and provided the location.

Victoria Police Chief Cole Dinkel soon responded and found a silver pickup truck behind the house. When Dinkel approached, he smelled a strong odor of alcohol coming from inside the pickup and noticed that the driver's eyes were bloodshot. The driver identified himself as "Smith," and denied he had been drinking or driving. His speech was slurred. Smith told Dinkel there was nothing illegal about him drinking on his property. Smith also said he could have been driving on eight lots without getting on the road.

After State Trooper Doug Schulte arrived at the scene, he and Dinkel determined the pickup truck had recently been operated because the truck's hood and brakes were very warm to the touch. Dinkel had Smith get out of his truck and told him they were going to do an investigation. Schulte performed a pat-down on Smith, located a pocket knife, and put it on the hood of his truck. As Dinkel began moving Smith around the truck so that he would be in view of the dashboard camera, Smith lunged at the grill of the truck and hit it with his head or his hand. The officers believed Smith was lunging for the knife on the hood of his truck. Dinkel then handcuffed Smith for officer safety and Smith's own safety.

2

Deputy Brian Shannon from the Ellis County Sheriff's Department arrived on scene, and Dinkel told Shannon that Smith had been handcuffed for safety reasons. Smith refused to perform field sobriety tests and refused to do a preliminary breath test. Shannon did not provide Smith with *Miranda* warnings. Shannon placed Smith under arrest and transported him to the law enforcement center, where he again declined to take a breath test.

The State charged Smith with driving under the influence, test refusal, and registration violation but dropped the third charge prior to trial. At the close of the State's case, Smith moved for a directed verdict on both counts, arguing insufficiency of the evidence. The district court denied both motions, and the jury returned a verdict of guilty on both charges. Smith later filed a motion for judgment notwithstanding the verdict, which the district court also denied. Smith timely appeals, arguing error in not granting the motions and that the prosecutor's statements during closing argument denied him a fair trial. We address this latter argument first.

I.    *Prosecutorial error*

Smith argues that the prosecutor committed misconduct during the closing argument by repeatedly stating his personal opinion of the credibility of witnesses. Although prosecutors are given wide latitude in discussing the evidence in closing argument, they may not present their personal opinions on witness credibility. *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000).

We analyze prosecutorial error under *State v. Sherman*, 305 Kan. 88, 108, 378 P.3d 1060 (2016) (overruling *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 [2004] and discarding the "prosecutorial misconduct" analysis). We need not conduct an analysis under *Sherman*, though, because the State concedes that prosecutorial error occurred, that the errors prejudiced Smith's right to a fair trial, and that we should grant a new trial.

3

Having reviewed the record, we agree. We thus reverse and remand for conceded prosecutorial error. We nonetheless reach the remaining issues briefed on appeal.

## II. *The motion to suppress*

### *The* Miranda *issue*

Smith moved to suppress "any statements made by Mr. Smith regarding alcohol consumption, driving, field sobriety tests, or submission to a blood test." But Smith fails to specify which statements he believes the court should have suppressed. Smith appears to argue that his detention for questioning by law enforcement officers constituted custodial interrogation; thus, he should have been given *Miranda* warnings before being questioned.

The district court denied Smith's motion, finding that Smith "was not in custody for purposes of *Miranda* when [he spoke] to law enforcement officers at the scene," that "the use of handcuffs . . . was for officer and public safety and that [Smith] was not under arrest until Deputy Shannon told [Smith] he was under arrest and put him in his patrol vehicle."

### *Standard of review*

We apply a bifurcated standard of review to the denial of a motion to suppress. We first review the district court's factual findings to determine whether they are supported by substantial competent evidence without reweighing the evidence, assessing the credibility of the witnesses, or resolving conflicts in the evidence. We then review the district court's legal conclusions using a de novo standard. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). Where, as here, there are no material disputed facts, the suppression of evidence is a question of law, subject to unlimited review.

4

*Was Smith "in custody" at the time of the questioning?*

Law enforcement officers are not required to administer *Miranda* warnings to every person they question, but only to those who are in custody and subject to interrogation. A custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way. This type of interrogation is distinguished from an investigatory interrogation, which occurs as a routine part of the fact-finding process before the investigation reaches the accusatory stage. *State v. Warrior*, 294 Kan. 484, 496, 277 P.3d 1111 (2012) (establishing factors for determining whether an interrogation is investigatory or custodial).

Persons detained for an ordinary traffic stop are not "'in custody'" for purposes of *Miranda. Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). Although a traffic stop "curtails the 'freedom of action'" of the driver and is a seizure for Fourth Amendment purposes, it is not per se a custodial action requiring *Miranda* safeguards. 468 U.S. at 436-40 (finding the defendant was not in custody for purposes of *Miranda* until he was arrested, thus the statements he made prior to arrest were admissible against him).

The Kansas Supreme Court has followed *Berkemer*. In *State v. Price*, 233 Kan. 706, 664 P.2d 869 (1983), it found the defendant was not in custody when officers drove him to where his truck was found in the ditch and asked him how the accident had occurred. Similarly, in *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 518, 242 P.3d 1179 (2010), the fact that the driver was questioned while seated in a patrol car was not significant enough to distinguish the case from *Berkemer*. We follow *Berkemer* as well, finding substantial competent evidence supporting the conclusion that Smith was not in custody at the time he was detained before being arrested.

Although officers handcuffed Smith before they asked him some questions, officers told Smith immediately after he slammed his head or hand onto the truck that he was not under arrest but was being handcuffed for his own safety and theirs. Dinkel had previously observed similar behavior when "someone is not in their right mind or if they are intoxicated."

The Kansas Supreme Court has held that the use of handcuffs and/or frisking a detainee for weapons does not automatically convert an investigatory detention into an arrest. *State v. Hill*, 281 Kan. 136, 142, 130 P.3d 1 (2006). We have done the same. *State v. Robertson*, No. 112,852, 2015 WL 6835297, at *6 (Kan. App. 2015) (unpublished opinion) (finding that an officer acted reasonably when she handcuffed and frisked defendant for officer safety, thus defendant was not arrested until later).

Handcuffing does not transform a *Terry* stop into a custodial arrest when the circumstances reasonably warrant that measure. See *United States v. Shareef*, 100 F.3d 1491, 1502 (10th Cir. 1996) (use of firearms, handcuffs, or other forceful techniques does not necessarily transform *Terry* stop into full custodial arrest when circumstances reasonably warrant such measures); *United States v. Blackman*, 66 F.3d 1572, 1576-77 (11th Cir. 1995) (police handcuffing person or drawing their weapons does not, as a matter of course, transform investigatory stop into arrest).

We distinguish between handcuffing a person for the commission of a crime and handcuffing a person for one's safety, when determining whether a person is in custody.

> "A person is considered to be under arrest when he or she is physically restrained or when he or she submits to the officer's custody for the purpose of answering for the commission of a crime. K.S.A. 22-2202(4); K.S.A. 22-2405(1). For purposes of this analysis, the critical part of this definition is that the physical restraint be effectuated in order to answer for the commission of a crime as opposed to any other reason, including but not limited to officer safety. See *State v. Blackston*, No. 109,684, 2014 WL 4995842,

6

at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. __ (August 4, 2015); *State v. Anderson*, No. 99,779, 2009 WL 1591399, at *5 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1095 (2010).

> "Police officers are not required to take unnecessary risks in the line of duty. They are permitted to use precautionary measures that are reasonably necessary to safeguard their personal safety. *State v. Nugent*, 15 Kan. App. 2d 554, 564, 811 P.2d 890 (citing K.S.A. 22-2402[2]), *rev. denied* 249 Kan. 777 (1991). For example, the use of handcuffs and/or frisking a detainee for weapons does not automatically convert an investigatory detention into an arrest. *State v. Hill*, 281 Kan. at 142; *Anderson*, 2009 WL 1591399, at *5." *Robertson*, 2015 WL 6835297, at *5.

Given the circumstances reflected in the record, including Smith's drunken state and his slamming his head or hand onto the truck, officers were warranted in handcuffing Smith for his own safety and theirs. Doing so did not transform the investigatory detention into a custodial situation. We find substantial competent evidence supporting the district court's legal conclusion that Smith was not in custody until after he was handcuffed and was told that he was under arrest.

III.    *The constitutionality of K.S.A. 8-1025(a)(2)*

We next address Smith's challenge to his conviction of DUI test refusal, in violation of K.S.A. 8-1025. Smith contends that this statute violates the Fifth Amendment of the United States Constitution because it compels him to take a breath or blood test and criminalizes his refusal to do so. But Smith does not cite any authority in support of that assertion or show that he raised this issue below or explain why this court should consider it for the first time on appeal.

Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Several exceptions to the rule exist. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). But Kansas Supreme Court

7

Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34) requires an appellant to explain why an issue not raised below should be considered for the first time on appeal. Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and the issue will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). That rule is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (litigants have no excuse for noncompliance with Rule 6.02[a][5]).

Smith has failed to preserve the issue whether K.S.A. 2013 Supp. 8-1025(a)(2) is unconstitutional. We note the recent case of *State v. Ryce*, 303 Kan. 899, 964, 368 P.3d 342 (2016), *adhered to on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (finding K.S.A. 2013 Supp. 8-1025[a][2] facially unconstitutional), but we decline to apply that case here sua sponte, given the procedural posture of this case and the parties' lack of opportunity to brief its applicability. The parties may, of course, raise this issue on remand.

IV.    *The motion for a directed verdict*

At the close of the State's evidence, Smith unsuccessfully moved for a directed verdict, arguing insufficient evidence on both counts. His primary contention was that insufficient evidence showed that he was driving the truck and was driving while under the influence of alcohol.

*Standard of review*

A motion for judgment of acquittal is substantially the same as a motion or appeal attacking the sufficiency of the evidence, and we apply the same standard of review. *State v. Cruz*, 15 Kan. App. 2d 476, 488, 809 P.2d 1233 (1991). In reviewing a district court's denial of a motion for judgment of acquittal, we consider all the evidence in the light most favorable to the State and ask whether a rational factfinder could have found the

defendant guilty beyond a reasonable doubt. In doing so, we will not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence.

To establish a prima facie case of driving under the influence of alcohol, the State must prove that the defendant operated a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely operating it. The State presented evidence sufficient to meet all the elements.

First, we find sufficient evidence that Smith operated a vehicle. The reporting witness testified that he saw a Dodge pickup truck drive into a ditch and then back on to the road. When the witness stopped his vehicle, the truck almost hit him. The witness turned around, followed the truck, and observed it slowing down and speeding up and driving from ditch to ditch. The witness called dispatch, reported those actions, followed the truck to a house in Pfiefer, and watched the truck pull in and drive toward the back of the house. Soon after, the witness spoke to the responding officer, Victoria Police Chief Dinkel, on the street outside the house. Dinkel then pulled into the yard and saw Smith sitting in the driver's seat of his truck. The engine was not running.

Very little time elapsed between Smith's driving the truck into the yard and Dinkel's speaking with Smith while Smith was seated in the driver's seat of the truck. Officers felt the hood of the truck and found it was very warm, as were the brakes, and reasonably concluded that the truck had been operated recently. Smith told Dinkel that the keys to the truck were on the ground next to the driver's side and said he could have been driving without getting on the road. Thus, sufficient evidence shows that Smith was the person the witness had observed driving the truck.

Sufficient evidence also shows that Smith was under the influence of alcohol at the time and was incapable of driving safely. Dinkel testified that upon making contact with Smith, he immediately noticed the smell of alcohol. Smith had bloodshot, watery

9

eyes and slurred speech. Deputy Shannon also noticed a strong odor of alcohol coming from Smith and noticed his bloodshot eyes. When Smith got out of the truck, he was uncoordinated and had poor balance. Smith became belligerent with officers. At one point, Smith lunged toward the grill of his truck with his head or hand, a behavior that Dinkel had observed previously when "someone is not in their right mind or if they are intoxicated."

From these facts and others adduced at trial, viewed in the light most favorable to the State, a rational jury could have found Smith guilty of driving under the influence of alcohol to a degree that rendered him incapable of safely operating a vehicle. The district court did not err in denying Smith's motion for directed verdict.

V. *The motion for judgment notwithstanding the verdict*

Five days after trial, Smith filed a motion for judgment notwithstanding the verdict, arguing that the State had failed to prove the venue of the crime as necessary to establish that the Ellis County court had jurisdiction. The district court denied that motion.

*Preservation of the issue*

The State argues that Smith failed to preserve this issue because his notice of appeal does not reference the decision on the judgment notwithstanding the verdict motion or the date it was entered. But we issued a show cause order on jurisdiction and retained the appeal. Kansas has a clear and longstanding policy against piecemeal appeals. *State v. LaPointe*, 305 Kan. 938, 949, 390 P.3d 7 (2017). We choose to hear this argument.

10

*Proof of venue*

Kansas law requires crimes to be prosecuted in the county in which the crimes were committed, subject to exceptions not applicable here. K.S.A. 22-2602. Proof of venue for trial is a jurisdictional fact that must be proved by the State. *State v. Hunt*, 285 Kan. 855, 860, 176 P.3d 183 (2008). It is not necessary, however, that venue be proved by specific questions and answers. *State v. Deutscher*, 225 Kan. 265, 272, 589 P.2d 620 (1979). Instead, venue may be established by circumstantial evidence from which the county in which the events occurred may be reasonably inferred. *State v. Fleury*, 203 Kan. 888, 890, 457 P.2d 44 (1969).

When, as here, the sufficiency of the evidence of venue is attacked, we review the record facts in the light most favorable to the State to determine if substantial competent evidence supports a finding of venue in the county. *State v. Lieurance*, 14 Kan. App. 2d 87, 91, 782 P.2d 1246 (1989). In *Lieurance*, the testimony of a Sedgwick County deputy about an occurrence while he was on patrol and the mention of Kellogg, Armour, and Post Oak Streets constituted substantial competent evidence to establish venue.

Our review of the record reveals a significant amount of testimony concerning where the pickup truck was being driven. For example, the reporting witness stated that he "followed [Smith] to Chetolah Gold Road and 280th, . . . followed the pickup to I want to say 330th, and that is where he went to the south to go to Pfiefer." The witness then followed Smith into Pfeifer and saw him turn into the driveway of a home on Sarratov Street in Pfiefer.

The district court stated that although it was not certain whether the rural intersections were within Ellis County, there was "absolutely no dispute in the evidence" that Smith was seen driving to a home in Pfeifer, which is known to be in Ellis County. Further, the district court indicated that even if some of the roads Smith was driving on

11

were not within Ellis County, venue was proper in Ellis County. The district court cited several cases out of the "long history of cases" recognizing that "the location of an event for venue purposes in a criminal case may be established by judicial notice." The district court relied on K.S.A. 60-409(b)(3), which provides that judicial notice—with or without request of a party—may be taken of "such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute."

The State introduced sufficient evidence for a rational factfinder to conclude, beyond a reasonable doubt, that Smith drove his truck in Pfeifer, which is indisputably in Ellis County. The district court did not err in denying Smith's motion for judgment notwithstanding the verdict.

For the reasons stated above, we affirm the district court's rulings on Smith's motions. Due to the prejudicial prosecutorial error, however, we reverse and remand for a new trial.