NOT DESIGNATED FOR PUBLICATION

No. 123,848

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIE B. JORDAN JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed July 29, 2022.
Affirmed.

*Nicholas David*, of The David Law Office LLC, of Lawrence, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: In 2017, Willie B. Jordan Jr. broke into Mindy Ackerson's apartment with a shotgun in hand. He fired once, hitting Ackerson's houseguest, Gregory Huggins, in the arm. A stray shotgun pellet struck another houseguest, Leona Hammerland, in the foot. Hammerland fled to the apartment balcony and jumped. Jordan was quickly apprehended, and the State charged him with several crimes, including aggravated assault against Hammerland. At trial, Hammerland testified she did not feel fearful during the incident and never believed she was in harm's way. Even so, the jury convicted Jordan on all counts, including aggravated assault. The district court sentenced him to 117 months in prison. On appeal, Jordan contends the State failed to present

1

sufficient evidence to sustain his conviction for aggravated assault given that Hammerland testified she did not fear for her life during the incident. However, the record before us contains other evidence to establish that a reasonable jury could conclude that Hammerland experienced significant fear during the attack, despite her contentions to the contrary when required to testify in Jordan's presence. Thus, following a review of the evidence in the light most favorable to the State, we have no hesitancy in concluding that sufficient evidence was adduced at trial to support the jury's guilty verdict for the aggravated assault of Hammerland.

FACTUAL AND PROCEDURAL BACKGROUND

On April 29, 2017, Mindy Ackerson hosted a dinner gathering for her friends Leona Hammerland, Gregory Huggins, and one other acquaintance. While Ackerson finished meal preparations in the kitchen, Willie Jordan Jr.—an acquaintance of Ackerson's—burst into her apartment wielding a sawed-off shotgun. He fired once, which struck Huggins in the right arm, and a stray buckshot pellet hit Hammerland in the foot. Ackerson and Hammerland sought refuge on the balcony but, seemingly unconvinced of her safety, Hammerland opted to jump to the ground below. Ackerson reentered the apartment and found that Jordan had left so she drove Huggins to the hospital. Meanwhile, Hammerland secreted herself in the building's basement and called her mother.

Jordan was arrested a few months later and a Shawnee County grand jury indicted him on two counts of aggravated battery and one count each of aggravated burglary, aggravated assault with a deadly weapon, criminal possession of a weapon, and criminal damage to property.

Jordan's case proceeded to trial. Hammerland testified that she and Jordan shared a friendship and that Huggins and Jordan argued over money just before the shooting. She

2

told the jury that Jordan broke into Ackerson's apartment and shot Huggins in the arm, and a stray buckshot pellet struck her left foot. As for Hammerland's escape to the balcony, the following exchange occurred:

> "[PROSECUTOR]: Right, Ms. Hammerland, I want to go back to the apartment. We had just gotten through that you had stated that Mr. Huggins got shot. He was shot by Willie Jordan. That you also got some of the spray into your foot, and that's part of the injuries that we just went through with the pictures. You testified you jumped off the balcony—
>
> "[HAMMERLAND]: Yes, I did.
>
> "Q: When—when you heard these shots—
>
> "A: I don't remember, I just did it.
>
> "Q: Okay. Now when you heard the shots, were you ever in fear?
>
> "A: I wouldn't really say fear. I would say, kind of, shocked. I don't know what—I don't know how—I don't know. I was just—I didn't want to be involved in it.
>
> "Q: Right. Did you think you were going to be in some type of harm's way, and that's why you jumped?
>
> "A: I'd say no."

Topeka Police Officer Zachary Goodman was present when Hammerland identified Jordan in a lineup and testified that Hammerland was visibly upset and trembling during that process. The State also presented an audio recording of Hammerland's interview with Detective Charles Wilson during which she could be heard sobbing and telling the detective "I'm so scared" as she recounted the shooting.

3

At the conclusion of the parties' respective cases, the court instructed the jury on the charged offenses. As for the aggravated assault instruction, the district court informed the jury that the State carried the burden to prove three elements in order to establish Jordan's guilt beyond a reasonable doubt: (1) Jordan knowingly placed Hammerland in reasonable apprehension of immediate bodily harm; (2) he did so with a deadly weapon; and (3) the act occurred on April 29, 2017, in Shawnee County. The jury returned a guilty verdict on all counts, and the district court sentenced him to serve 117 months in prison.

Jordan timely brings his case before us to assess the sufficiency of the evidence to support his aggravated assault conviction.

ANALYSIS

THE STATE PRESENTED SUFFICIENT EVIDENCE TO SUSTAIN JORDAN'S CONVICTION FOR AGGRAVATED ASSAULT

Jordan's sole argument on appeal is that the State failed to present sufficient evidence to convict him of aggravated assault. He directs our attention to Hammerland's denial that she ever feared for her life during the shooting—a statutory prerequisite of aggravated assault. See K.S.A. 2016 Supp. 21-5412(b)(1). The State counters this assertion with references to several pieces of evidence adduced at trial that demonstrated Jordan's actions caused Hammerland to fear for her life.

When a criminal defendant challenges the sufficiency of evidence underlying a conviction, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. A conviction of even the gravest offense may be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. *State v. Potts*, 304 Kan. 687, 694, 374 P.3d 639 (2016).

4

The jury convicted Jordan of aggravated assault in violation of K.S.A. 2016 Supp. 21-5412(b)(1), which makes it a crime to knowingly place a person in reasonable apprehension of immediate bodily harm through the use of a deadly weapon. On the other hand, a foundation for the offense is lacking when the intended victim does not suffer such apprehension. *State v. Deutscher*, 225 Kan. 265, 272, 589 P.2d 620 (1979); *State v. Martinez*, 20 Kan. App. 2d 824, 834, 893 P.2d 267 (1995). Jordan contends Hammerland's testimony undercuts the State's theory, and thus there is no evidence to support his conviction.

Jordan rests his argument on *State v. Warbritton*, 215 Kan. 534, 527 P.2d 1050 (1974). In that case, Michael Warbritton shot his wife in their bedroom and then confronted his mother-in-law, Mary Bailey, in the living room. He pointed a gun at Bailey, who was holding Warbritton's baby. At trial, Bailey testified she did not fear for her life because she did not believe Warbritton would shoot her while she was holding his child. Yet, the jury still found him guilty of the aggravated assault of Bailey. On appeal, the Kansas Supreme Court acknowledged that while "the atmosphere was heavily fraught with danger and was threatening enough to have induced apprehension on the part of Mrs. Bailey for her personal safety," the aggravated assault statute, K.S.A. 1971 Supp. 21-3410, required both objectively fearful circumstances and the subjective fear of the victim. 215 Kan. at 537. The court determined that since Bailey testified she did not experience fear during the incident, which was the only evidence introduced regarding her emotional state, the State failed to prove the necessary elements of the offense. 215 Kan. at 537-38.

The State challenges Jordan's assertion by guiding us toward several cases which have sought to clarify *Warbritton*'s rule. In *State v. Lessley*, 271 Kan. 780, 782, 26 P.3d 620 (2001), Gregory Lessley accosted a woman in the parking lot of an apartment complex and brandished a gun in front of Sarah Blackman, who was in the passenger seat of a nearby car. The woman pleaded with Blackman not to leave, but once Blackman saw

5

Lessley's gun, she directed her husband to drive away. The State charged Lessley with the aggravated assault of Blackman, but Blackman testified at trial that she never feared Lessley would hurt her so long as she distanced herself from the dispute. Blackman's husband, on the other hand, testified that Blackman was frightened during the incident. The jury convicted Lessley of the aggravated assault of Blackman and he appealed, arguing that *Warbritton* required reversal of his conviction. The Kansas Supreme Court disagreed and held that a reasonable jury could conclude that Blackman's insistence for her husband to drive away, in the face of the other woman's pleas that they stay, stemmed from her fear of harm. 271 Kan. at 790. Thus, despite Blackman's testimony that she was not scared, the court determined that contrary testimony provided sufficient evidence to convict Lessley of aggravated assault.

The Supreme Court followed *Lessley* in *State v. Brown*, 300 Kan. 565, 331 P.3d 797 (2014). In that case, Quartez Brown pointed a gun at Ashley Green during a home invasion and directed her to lie down on the floor. The State charged Brown with several crimes, including aggravated assault of Green. At trial, Green testified that while she did feel fearful during the incident, she also thought there might be a chance Brown and his cohorts were friends of her boyfriend and just playing around. The jury still convicted Brown of aggravated assault, and he also argued on appeal that *Warbritton* required reversal of that conviction. The Kansas Supreme Court rejected that argument and found the facts of his case bore greater similarity to *Lessley*:

> "Although Green testified that she initially thought the men might be playing a joke on [her boyfriend], she clearly said that she considered it a threat when they pointed the guns at her. Moreover, if she were not afraid, why did she immediately comply with the armed men's demand to get on the ground? If a person complies with a demand made at gunpoint, it is logical to infer that the compliance was motivated by a fear of bodily harm." 300 Kan. at 584.

6

In short, the court determined that Green's behavior offered a compelling factor to consider. In the case before us, Hammerland testified she did not experience any fear during the confrontation at Ackerson's apartment. But her actions belie that assertion. Hammerland and Ackerson both testified that after Hammerland was shot, she escaped to Ackerson's balcony and promptly jumped over the edge. When she landed on the ground below, she immediately sought sanctuary in the building's basement and called her mother. Again, the jury also heard Officer Goodman's testimony that Hammerland was shaking and looked scared when she identified Jordan as the assailant. And in Hammerland's recorded interview with Detective Wilson, that the prosecutor played for the jury, Hammerland cried when she provided him with details about the shooting and remarked that she was very afraid.

Thus, while Hammerland claimed to be unafraid during the shooting, the other evidence adduced at trial suggested otherwise. This evidence, viewed in the light most favorable to the State, is sufficient to support the jury's finding that Jordan was guilty beyond a reasonable doubt of aggravated assault.

Affirmed.