NOT DESIGNATED FOR PUBLICATION

No. 126,203

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHADRICK ALLEN HALEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harper District Court; GATEN T. WOOD, judge. Submitted without oral argument. Opinion filed April 11, 2025. Affirmed in part, vacated in part, and remanded with directions.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: In this consolidated appeal, Chadrick Allen Haley appeals the district court's decision to revoke his probation in case No. 19CR86 (Case 1), and he appeals his conviction of misdemeanor domestic battery in case No. 22CR109 (Case 2). In Case 1, Haley claims the district court abused its discretion by revoking his probation because the district court was unaware it had discretion to impose intermediate sanctions rather than revoke probation. In Case 2, Haley claims insufficient evidence supported a finding that he committed the crime in Harper County and that the district court erred in assessing Board of Indigents' Defense Services (BIDS) attorney fees without considering

1

on the record his financial circumstances and ability to pay. After thoroughly reviewing the record, we reject Haley's first two claims but agree with his third. Thus, we affirm Haley's probation revocation in Case 1 and his domestic battery conviction in Case 2, but we vacate the BIDS order in Case 2 and remand for reconsideration of those fees.

FACTUAL AND PROCEDURAL BACKGROUND

*Probation revocation in Case 1*

In April 2021, Haley pled guilty to one count of distribution of methamphetamine and one count of criminal trespass for crimes committed in September 2019. The district court sentenced Haley to a controlling term of 123 months' imprisonment but granted a downward dispositional departure to 36 months' probation with a 60-day jail sentence.

Haley later admitted to using alcohol and failing to provide a urine sample in violation of the conditions of his probation. He waived his right to a hearing and agreed to serve a two-day jail sanction. Haley later admitted to a positive drug test. He again waived his right to a hearing and agreed to serve a three-day jail sanction.

On September 20, 2022, the State moved to revoke Haley's probation on the grounds that he failed to maintain suitable employment, failed to remain in the area specified by his intensive supervision officer (ISO), tested positive for drugs, failed to complete 50 hours of community service, produced a diluted urine sample, and failed to pay various costs and fees. The State amended its motion to add an allegation that Haley failed to report to his ISO as directed. The district court held a probation violation hearing on December 5, 2022. At the hearing, Haley admitted all the allegations except for the one that he produced a diluted urine sample. After hearing arguments from counsel and a statement from Haley, the district court imposed a 60-day jail sanction and extended Haley's probation by 36 months.

2

Finally, on February 1, 2023, the State again moved to revoke Haley's probation, alleging that he had been convicted on January 26, 2023, of domestic battery in Case 2. At a hearing on March 6, 2023, Haley admitted the allegation. The district court revoked Haley's probation and ordered him to serve his original sentence.

*Domestic battery conviction in Case 2*

Eventually the State charged Haley with one count of domestic battery based on allegations that Haley caused physical contact in a rude, insulting, or angry manner to Michelle Dawn Haley, his wife, on July 8, 2022. The case proceeded to a bench trial on January 26, 2023. The State called Deanna Evans as its first witness. Evans lived across the street from Michelle on July 8, 2022, and she was the person who called the police to report the domestic dispute involving Michelle and Haley. Evans specified that she called the "Harper County 911 system." Evans disclosed her address and said it was in "Harper, Kansas." She identified her house on a map admitted into evidence at trial as "the one right below the word of 'Harper'" that was printed on the map.

Michelle testified about her encounter with Haley on July 8, 2022. Michelle had recently kicked Haley out of the house after he returned from what she described as a two-day binge. Haley returned to the house to collect his things, and Michelle was concerned he would take more than just his own possessions if not supervised. Upon arriving at the house after Haley, Michelle helped him load up a trailer attached to his truck. Haley and Michelle started arguing, and Haley got out of his truck and pushed Michelle. A short time later, the police arrived due to Evans' call. Michelle described how Haley was mad and that she did not receive any visible injuries.

At the close of the State's evidence, Haley moved for a directed verdict on the ground that the State did not establish "just exactly where [Evans' and Michelle's addresses] are." The district court considered that Evans and Michelle stated they lived in

3

Harper or worked near Harper, Kansas, so the court applied its own knowledge to that evidence to find the criminal conduct occurred in Harper County.

Haley testified on his own behalf and confirmed that he once shared the house in Harper, Kansas, with Michelle and that he currently resided in the Harper County Jail. Haley testified that he never shoved Michelle.

After Haley's testimony, the defense rested, and the State called as a rebuttal witness Officer Jacob Walter, a police officer for the City of Harper, Kansas. Walter confirmed that he responded to a call at Michelle's house in "the City of Harper."

After the close of evidence and closing arguments from the parties, the district court found Haley guilty as charged. The district court sentenced Haley to six months in jail to run consecutive to his sentence in Case 1. The district court, without further inquiry or elaboration, imposed "court-appointed attorney fees."

Haley timely appealed both cases. The district court issued an order consolidating Case 1 and Case 2 for appeal on March 13, 2023.

ANALYSIS

*Probation revocation in Case 1*

At the probation revocation hearing on March 6, 2023, after hearing arguments of counsel and Haley's statement to the court, the district court revoked Haley's probation and modified his sentence in Case 2 to run concurrent to the sentence in Case 1. Then addressing the decision to revoke probation, the district judge stated:

> "I'll summarize that, because of the departure, any violation sends you to prison. You
> have a previous violation by this Court. You have a previous violation or two by your

4

Community Corrections officers. On any grid you look at, any statute you look at, you should go to prison for what you've done and your performance on probation, either because you were granted the departure or because (c)(l)[C]. You have previous violations, have committed a new crime while on probation.

"Mr. Haley, I don't take any decisions lightly. But I don't know what else to do, or any choice.

"Or any other way that the evidence weighs in sending you to prison, that you are not amenable to probation. I sincerely wish you the best of luck, and I hope you come out a better person on the other side."

On appeal, Haley claims the district court abused its discretion by revoking his probation because the district court was unaware that it had discretion to instead impose an intermediate sanction and because revoking his probation was contrary to the legislative intent behind K.S.A. 22-3716's graduated sanctions scheme. The State asserts that the district court did not abuse its discretion when it revoked Haley's probation.

Once a probation violation is established, a district court has discretion to revoke probation and impose the original sentence unless the court is otherwise limited by statute. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). K.S.A. 22-3716 establishes a graduated intermediate sanction scheme. A court has discretion to revoke probation for certain felony offenses after an intermediate sanction has been imposed. K.S.A. 22-3716(c)(1)(C). If probation was granted as the result of a dispositional departure, the district court has discretion to revoke probation without first imposing an intermediate sanction. K.S.A. 22-3716(c)(7)(B). The district court has discretion to revoke probation without imposing an intermediate sanction if the offender commits a new felony or misdemeanor while the offender is on probation. K.S.A. 22-3716(c)(7)(C). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). The party asserting the district court

5

abused its discretion bears the burden of showing such abuse of discretion. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022).

Haley points to the revocation hearing transcript and argues the district judge used language suggesting that the court lacked discretion to do anything other than revoke Haley's probation. After summarizing Haley's failures on probation, the judge stated, "But I don't know what else to do, or any choice." The judge also stated, "because of the departure, any violation sends you to prison." Our Supreme Court has stated that "it is an abuse of discretion to refuse to exercise discretion or fail to appreciate the existence of the discretion to be exercised in the first place." *State v. Horton*, 292 Kan. 437, 440, 254 P.3d 1264 (2011). Haley claims because the district court was not aware it had discretion, it abused its discretion. The State argues the district judge also used language showing awareness of discretion, so there was no abuse of discretion. We agree with the State.

When read in isolation, the district judge used some language that could be construed as the court believing it lacked authority to do anything other than revoke Haley's probation. But Haley ignores other language in that same statement where the district court suggested it had discretion in how to proceed. The district court stated it did not "take any decisions lightly," implying that it was weighing all options before making a decision. The district court also stated, "[Y]ou should go to prison for what you've done and your performance on probation, either because you were granted the departure or because (c)(l)[C]." This language shows the district court considered Haley's conduct and performance on probation and the fact that he had received prior intermediate sanctions. The district court also based its decision on how the evidence weighed against Haley and how he was not amenable to probation, which again suggests the court considered the circumstances and applied its discretion to revoke Haley's probation.

When read in the proper context, the district court was not making a legal conclusion when it found it lacked "any choice" but to revoke Haley's probation. Given

6

Haley's many chances at probation and his repeated failures, the district court was simply explaining why additional intermediate sanctions were inappropriate. The court considered Haley's conduct and his inability to succeed on probation along with its statutory discretion to revoke probation under the circumstances. Thus, Haley has not met his burden to show the court's decision to revoke his probation was based on an error of fact or law, or was arbitrary, fanciful, or unreasonable.

Haley also argues the district court abused its discretion because the legislative intent of K.S.A. 22-3716 was to reduce the number of criminal offenders imprisoned due to probation violations. Haley concludes: "For the system to work as intended, district courts must make full use of their battery of intermediate sanctions." Because the court did not use every possible intermediate sanction available, Haley claims the district court abused its discretion.

This argument is a nonstarter because it contradicts the plain language of the statute. K.S.A. 22-3716(c)(1)(C) grants the district court discretion to revoke probation if certain intermediate sanctions have already been imposed. K.S.A. 22-3716(c)(7)(B) grants the district court discretion to revoke probation without intermediate sanctions if probation was granted as the result of a dispositional departure. K.S.A. 22-3716(c)(7)(C) grants the district court discretion to revoke probation without intermediate sanctions if the offender commits a new crime while on probation. Haley does not contest that these circumstances were present when the court revoked his probation. The district court granted Haley several intermediate sanctions in an effort to help him succeed on probation and avoid a lengthy prison term. But the intermediate sanctions scheme is not indefinite, and the district court had the authority to revoke Haley's probation under the circumstances. Haley has not shown an abuse of discretion.

*Sufficiency of the evidence to establish venue*

Haley next argues that insufficient evidence in Case 2 supported a finding that the domestic battery happened in Harper County. The State asserts the district court's venue finding was supported by sufficient evidence in the light most favorable to the State.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.' [Citations omitted.]" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Haley concedes that Evans testified she lived in Harper, Kansas, but claims that is not dispositive as to whether the crime occurred in Harper County. The State responds that a district court may infer venue based on any competent evidence. The State points to Evans' testimony that she lived in Harper, Kansas; Evans' identification of her and Michelle's houses on a map labeled, "Harper"; and Walter testifying that the crime occurred in Harper, Kansas, as sufficient evidence for the court to infer that the crime occurred in Harper County. Haley responds in his reply brief that evidence the crime occurred in Harper, Kansas, is insufficient to prove it occurred in Harper County because cities and counties do not always share the same name.

Venue is a fact to be determined by the fact-finder and may be proven by circumstantial evidence. *State v. Deutscher*, 225 Kan. 265, 272, 589 P.2d 620 (1979). The district court determined that it could apply its own knowledge to the evidence to find the criminal conduct occurred in Harper County. In *Deutscher*, the Kansas Supreme Court considered a sufficiency of the evidence question as to whether the evidence supported a finding that a crime occurred in Ellis County. The court concluded that evidence was presented that the crime occurred in the City of Ellis and that the district court sitting in

8

Ellis County could take judicial notice that the City of Ellis was in the county. 225 Kan. at 272. The court held under K.S.A. 60-409 that Kansas courts may take judicial notice of the cities located within their territorial boundaries. 225 Kan. at 272. Here, testimony and a map admitted into evidence established the crime occurred in the City of Harper. The district court sitting in Harper County could judicially notice that the City of Harper is entirely within the boundary of Harper County.

But even without considering judicial notice, Evans testified at trial, in response to a question in direct examination, that she called the "Harper County 911 system" to report the domestic battery. As already stated, venue is a fact to be determined by the fact-finder and may be proven by circumstantial evidence. *Deutscher*, 225 Kan. at 272. It may be established by proof of facts and circumstances introduced into evidence from which the place of the crime may be fairly and reasonably inferred. *State v. Pencek*, 224 Kan. 725, 729, 585 P.2d 1052 (1978). Evans would not have called the Harper County 911 system unless the incident she claimed she observed occurred in that county. Based on Evans' testimony that she called the Harper County 911 system to report the domestic battery, a rational fact-finder could fairly and reasonably infer that the crime occurred in Harper County. Considering the evidence in the light most favorable to the State, the State presented sufficient evidence at trial to establish venue in Case 2.

*The BIDS fee*

Haley claims the district court erred when it imposed BIDS fees without inquiring on the record about his financial circumstances or his ability to pay. At sentencing, the district court, without further inquiry or elaboration, imposed "court-appointed attorney fees." The journal entry of judgment specified BIDS fees at $840.00. The State concedes that Haley is correct and the case must be remanded for reconsideration of those fees.

9

K.S.A. 22-4513(b) provides that in determining the amount and method of payment of attorney fees, "the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." In *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006), the Kansas Supreme Court clarified that the sentencing court must *explicitly* state on the record how those factors have been weighed in the court's decision. Because the district court violated the statutory mandate and *Robinson*, we vacate the district court's imposition of BIDS fees in Case 2 and remand with directions either for the State to waive its request for reimbursement of the fees or for the district court to make the necessary inquiry and findings on the record before imposing the fees. See *State v. Phillips*, 289 Kan. 28, 43, 210 P.3d 93 (2009) (holding disposition for inadequate BIDS findings is remand for reconsideration of fees).

Affirmed in part, vacated in part, and remanded with directions.